[Cite as *Schoch v. Schoch*, 2019-Ohio-1394.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

CARMEN SCHOCH

    Appellant

    v.

JEFFREY SCHOCH

    Appellee

C.A. No.    18CA011382

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17DR082335

DECISION AND JOURNAL ENTRY

Dated: April 15, 2019

CALLAHAN, Judge.

{¶1} Appellant, Carmen Schoch, appeals the judgment of divorce ordered by the Lorain County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

{¶2} Carmen and Jeffrey Schoch married in 1998. Throughout their twenty-year marriage, they shared a residence, but conducted their financial affairs on a mostly separate basis. Mr. Schoch was employed by the Cleveland Regional Transit Authority before and throughout the marriage until his physical condition required him to enter disability retirement in 2016. Ms. Schoch worked in a variety of senior care positions throughout the marriage. The couple's most significant marital assets consisted of the marital residence, the marital portion of Mr. Schoch's retirement through the Ohio Public Employees Retirement System ("OPERS") and

his deferred compensation, and their respective collections that they acquired during the course of the marriage.

{¶3} When the Schochs divorced in 2018, the trial court determined that the value of the marital residence was $124,000 and concluded that a portion of the equity was Mr. Schoch's separate property based on the premarital purchase of the property and contributions toward the construction of a pole barn from the sale of a premarital asset. The trial court recognized that Mr. Schoch's OPERS retirement was a marital asset, but awarded it to Mr. Schoch in its entirety without determining its value. The trial court assigned a zero value to each item in the parties' collections and awarded each collection in its entirety to the respective spouse. The trial court also determined that Ms. Schoch's conduct during the course of the divorce proceedings warranted an award of attorney's fees to Mr. Schoch.

{¶4} Ms. Schoch filed this appeal. Her five assignments of error are rearranged for purposes of discussion.

II.

**ASSIGNMENT OF ERROR NO. 3**

THE COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE MARITAL HOME TO BE VALUED AT $124,000, RELYING UPON AN APPRAISAL IT SPECIFICALLY EXCLUDED FROM EVIDENCE.

{¶5} In Ms. Schoch's third assignment of error, she argues that having excluded an appraisal of the marital residence, the trial court erred by relying on the parties' testimony about the home's value that was based on that report. This Court does not agree.

{¶6} Because a trial court has discretion in determining the value of a marital asset, this Court will not reverse such a determination in the absence of an abuse of that discretion. *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 34, citing *Sergi v. Sergi*, 9th Dist.

Summit No. 17476, 1996 WL 425914, *4 (July 31, 1996). An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶7} A witness who offers an opinion regarding the value of property must ordinarily be qualified as an expert, but an owner of property may testify about its value without being so qualified. *Corrigan v. Corrigan*, 9th Dist. Medina No. 3174-M, 2001 WL 1044210, *2 (Sept. 12, 2001), citing *Tokles & Sons, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621 (1992), paragraphs one and two of the syllabus, overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994). The basis for this rule is that an owner is presumed to be familiar with the property by virtue of "having purchased or dealt with it." *Tokles & Sons, Inc.*, at paragraph two of the syllabus.

{¶8} In this case, Ms. Schoch's attorney objected to the admission of the appraisal report because the appraiser did not appear to testify and authenticate its contents. Nonetheless, both Ms. Schoch and Mr. Schoch identified the value set by the appraiser and expressed their own opinions about whether that number accurately reflected the value of the property. Their lay witness testimony in this regard was proper. *See Corrigan* at *2. Ms. Schoch did not object to Mr. Schoch's testimony and, in addition, this Court notes that Ms. Schoch also testified about the appraised value of the home in response to an inquiry from her own attorney. The trial court did not abuse its discretion by permitting this testimony, and Ms. Schoch's third assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 4**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED ATTORNEY['S] FEES TO BE AWARDED TO THE APPELLEE DESPITE NO EVIDENCE ON THE RECORD TO JUSTIFY THE SAME.

{¶9} Ms. Schoch's fourth assignment of error argues that the trial court abused its discretion by awarding attorney's fees when the record did not support the conclusion that she engaged in misconduct.

{¶10} A trial court may award attorney's fees in a divorce as provided by R.C. 3105.73(A):

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

"Because a court addresses an award of attorney['s] fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP-269, 2008-Ohio-6815, ¶ 17. A trial court has broad discretion in considering an award of attorney's fees, and an award will only be reversed upon an abuse of the trial court's discretion. *Guziak v. Guziak*, 80 Ohio App.3d 805, 816 (9th Dist.1992).

{¶11} In its discussion of attorney's fees, the trial court focused on Ms. Schoch's conduct during the course of the divorce litigation. In that regard, the trial court observed:

> [Ms. Schoch] engaged in misconduct. She hid [Mr. Schoch's] jewelry and surreptitiously sent the property to Maryland. She destroyed property in the household and even told her son to not be careful with Mr. Schoch's belongings. Lastly, she arrived at an agreed upon meeting to discuss settlement, but then left after driving [past] the window.

The record supports the trial court's conclusions.

{¶12} Mr. Schoch testified that he owned several pieces of gold jewelry that had been missing for several years. Ms. Schoch's son, Dustin Whiteaker, recalled that near the time the parties' divorce proceedings commenced, Ms. Schoch gave him a container secured with a zip tie for safekeeping, representing that she was concerned about leaving her possessions in the marital residence. He testified that Ms. Schoch checked the box during a visit a few months later, but that apart from that, he stored it in his out-of-state home undisturbed until March 2018. At that time, when Ms. Schoch asked him to return the container during a visit to Ohio, Mr. Whiteaker decided to open it. He testified that in addition to some of Ms. Schoch's jewelry, the box contained a gold bracelet and necklace that he recognized as belonging to Mr. Schoch. Mr. Whiteaker also testified regarding Ms. Schoch's conduct during his visit to Ohio. Specifically, he recalled that Ms. Schoch criticized him for exercising care while he helped Mr. Schoch move items in the garage of the marital home because it was "going to be [her] stuff anyways."

{¶13} Mr. Schoch testified about Ms. Schoch's conduct during the divorce litigation. He noted that she had retained two previous attorneys and that his attempts to resolve the case had been consistently frustrated:

> [Counsel] and I came up with a proposal and we proposed it to [Ms. Schoch], and we got absolutely no response until I found out that she fired the lawyer and got another lawyer, a second lawyer. And in that process, we presented another proposal, and the same thing happened. No nothing was sent back, nothing was heard back, there was no offer on top of my offer, and that lawyer ended up not being her representative also.

Mr. Schoch also testified that at times, he believed that the parties had reached an agreement as the result of settlement conferences, but that the settlements never came to fruition. Finally, he recalled that he and his attorney scheduled a meeting with Ms. Schoch at a place and time of her choosing during a period of time in which she was unrepresented. According to Mr. Schoch's

testimony, he saw Ms. Schoch drive past the meeting location and drive away without leaving her vehicle.

**{¶14}** Ms. Schoch disputes this testimony at every point, but it is within the trial court's discretion to evaluate the credibility of witnesses. *Laubert v. Clark*, 9th Dist. Medina No. 03CA0077-M, 2004-Ohio-2113, ¶ 10. The trial court did not abuse its discretion by determining that Ms. Schoch's misconduct warranted an equitable award of attorney's fees under R.C. 3105.73(A).

**{¶15}** Ms. Schoch's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THAT THE POLE BARN WAS CONSTRUCTED VIA SEPARATE PROCEEDS OF THE APPELLEE.

**{¶16}** In her fifth assignment of error, Ms. Schoch maintains that the trial court erred by concluding that a pole barn on the parties' property was constructed entirely with proceeds from the sale of Mr. Schoch's separate property. This Court disagrees.

**{¶17}** R.C. 3105.171(B) provides that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property." This is a fact-based determination that falls squarely within the province of the trial court, and this Court reviews that determination under a manifest weight standard. *See Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 23, citing *Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 23. When the weight of the evidence is challenged in a civil case, this Court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and

a new trial ordered.'" (Alterations in original.) *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶18} "Separate property" includes "all real and personal property * * * that is found by the court to be * * * acquired by one spouse prior to the date of the marriage[.]" R.C. 3105.171(A)(6)(a)(ii). An asset retains its character as separate property when comingled with marital property unless the separate property is not traceable. R.C. 3105.171(A)(6)(b). The party claiming that separate property retains its character has the burden of proving its status, which may be accomplished by testimony or documentary proof. *See Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 27.

{¶19} The parties do not dispute that Mr. Schoch owned a 1970 Plymouth Barracuda at the time of their marriage or that Mr. Schoch sold the Barracuda to finance construction of a pole barn adjacent to the marital residence for the storage of Mr. Schoch's collection of engines. They also do not dispute that equity in the marital residence attributable to the pole barn is Mr. Schoch's separate property to the extent that it can be traced to the sale of the Barracuda and that the value of the equity attributable to the pole barn is $25,000. The area of disagreement between them is, therefore, narrow: Mr. Schoch maintained that the entire cost of erecting the pole barn was financed by the sale of the Barracuda. Ms. Schoch, on the other hand, claimed that Mr. Schoch only received $17,000 when he sold the Barracuda and that she financed the rest of the construction with her separate funds.

{¶20} Mr. Schoch testified that he sold the 1970 Barracuda for $25,000, identified the purchaser, and represented that he used all of the proceeds from the sale to finance construction of the pole barn. He expressed that he had no knowledge of any funds that Ms. Schoch contributed from her separate property toward the construction, and he disputed her claim to

have done so. Ms. Schoch, on the other hand, testified that Mr. Schoch sold the Barracuda for less than its full value—for either $17,000 or $18,000. She testified that she paid for the rest of the construction cost with $7,000 of her separate property that had been given to her by her father and later contributed another $1,200 from the same source. Ms. Schoch did not have any documentation confirming her alleged contribution of cash toward the construction.

{¶21} The trial court found Mr. Schoch's testimony regarding the construction of the pole barn to be credible, concluding that of the total equity in the marital residence of $96,038.28, "$25,000 * * * is [Mr. Schoch]'s separate property and is traceable back to the sale of his Plymouth Barracuda." The trial court was in the best position to evaluate the parties' credibility by "observ[ing] their demeanor, gestures and voice inflections, and us[ing] these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). *See also Eastley*, 132 Ohio St. 3d 328, 2012-Ohio-2179, at ¶ 21 (citing *Seasons Coal* for the proposition that "the court of appeals must always be mindful of the presumption in favor of the finder of fact."). Given the record in this case, we cannot say that the trial court "'clearly lost its way and created * * * a manifest miscarriage of justice'" by determining that the full $25,000 of equity attributable to the pole barn is Mr. Schoch's separate property. *See Eastley* at ¶ 20, quoting *Tewarson*, 141 Ohio App.3d at 115.

{¶22} Ms. Schoch's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ABUSED THE DISCRETION AFFORDED IT BY LAW WHEN IT RULED THAT APPELLEE WAS TO KEEP THE ENTIRE COLLECTION OF THE BRIGGS & STRATTON ENGINES FREE FROM ANY CLAIMS OF THE APPELLANT.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE ENTIRETY OF THE APPELLEE'S OPERS PENSION AND DISABILITY BENEFITS SHOULD BE HIS SOLE PROPERTY, FREE FROM ANY CLAIMS OF THE APPELLANT DESPITE ITS MARITAL STATUS.

**{¶23}** In her first and second assignments of error, Ms. Schoch argues that the trial court erred by ordering an equitable division of the marital property that awarded one hundred percent of Mr. Schoch's collection of engines and his entire pension to him without assigning a value to the parties' collections.

**{¶24}** R.C. 3105.171(C)(1) requires trial courts to divide marital property equally, except to the extent that an equal division would be inequitable. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5. In that situation, a trial court may order an equitable division. *Id.* The trial court must bear in mind that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property" and must consider "all relevant factors" related to the property division in determining what is equitable. R.C. 3105.171(C)(2); *Neville* at ¶ 11. These include:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension; [and]

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F). "Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion." *Neville* at 278.

**{¶25}** As this Court has recognized, trial courts have a duty to determine the value of all marital assets when fashioning a property distribution. *Wenger v. Wenger*, 9th Dist. Wayne No. 02CA0065, 2003-Ohio-5790, ¶ 18, citing *Rupp v. Rupp*, 6th Dist. Ottawa No. OT-86-71, 1987 WL 20443, *2 and *Willis v. Willis*, 19 Ohio App.3d 45, 48 (1984). "[A] trial court is not privileged to omit valuation altogether." *Willis* at 48. When a trial court does so, it may affect the entire division of property, and when valuation is omitted, this Court cannot effectively review the property division. *Zona v. Zona*, 9th Dist. Medina No. 05CA0007-M, 2005-Ohio-5194, ¶ 7. "If the parties fail to present evidence regarding an asset's value, the trial court should instruct the parties to submit such evidence." *Wenger* at ¶ 18, citing *Willis* at 48. *See also Zona* at ¶ 6.

**{¶26}** The Schochs' major marital assets included the marital portion of the equity in their home, which the trial court valued at $71,038.28, and Mr. Schoch's deferred compensation account with a total value of $57,671.29. [1] The trial court also determined that their respective collections were marital property, but assigned zero value to them despite some testimony of value in the record. As the trial court concluded, Mr. Schoch's disability benefits are not marital

---

[1] It is unclear whether the trial court determined the value of the marital portion of this account.

assets until such time as he may elect to receive disability payments instead of pension payments, if possible. *See Bevan v. Bevan*, 9th Dist. Lorain No. 06CA008968, 2008-Ohio-724, ¶ 7. His retirement plan, however, is a marital asset that must be considered as part of the property division. "[A] vested pension plan accumulated during marriage is a marital asset that must be considered in arriving at an equitable division of property." *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989), syllabus. Nonetheless, the trial court did not assign any value to Mr. Schoch's pension.

{¶27} It is apparent that the trial court intended to affect an equitable division of property in this case that accounted for all of the relevant factors, as provided by R.C. 3105.171(F). Because the trial court failed to value two of the parties' major assets, however, this Court is unable to determine whether the property distribution is equitable. Ms. Schoch's first and second assignments of error are sustained solely on that basis. *See Willis* at 48.

III.

{¶28} Ms. Schoch's third, fourth, and fifth assignments of error are overruled. Her first and second assignments of error are sustained to the extent explained above. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

DAVID J. BERTA, Attorney at Law, for Appellant.

PAMELA J. MACADAMS, Attorney at Law, for Appellee.