[Cite as *Kiernan v. Ward*, 2022-Ohio-1303.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MELISSA KIERNAN

    Appellee

    v.

JONATHAN WARD

    Appellant

C.A. No.     29994

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DR-2016-09-2667

DECISION AND JOURNAL ENTRY

Dated: April 20, 2022

---

CALLAHAN, Judge.

**{¶1}** Defendant-Appellant, Jonathan Ward ("Husband"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

## I.

**{¶2}** Husband and Plaintiff-Appellee, Melissa Ward ("Wife"), married in 1998 and had four children during their marriage. The couple initially lived in Ohio but moved to Virginia in 2000 after the birth of their first child. The following year, they started a landscaping business that became their primary source of income. While Husband handled the day-to-day operations, Wife performed the record and bookkeeping for the business and simultaneously cared for the children. The income the parties received from the business, and occasionally from other sources, allowed them to enjoy a very comfortable standard of living.

**{¶3}** In 2011, the parties purchased a home in Cuyahoga Falls with the understanding that they would relocate there as a family once they remodeled it. They used cash to pay outright

for the home and to have significant renovations performed. By 2013, however, Husband was still unwilling to relocate. Wife decided to leave Virginia with the children and moved to the Cuyahoga Falls home. Though she and the children occasionally returned to Virginia to visit Husband, they continued to reside in Cuyahoga Falls from that point forward. Wife used credit cards to pay for any necessities she or the children required, and Husband routinely paid those bills.

{¶4} In 2016, Wife filed a complaint for divorce, and Husband filed a counterclaim for the same. The case proceeded to trial, at the conclusion of which the trial court journalized a divorce decree. Husband attempted to appeal the decree, but this Court dismissed the appeal for lack of a final, appealable order. *See Ward v. Kiernan*, 9th Dist. Summit No. 29186, 2019-Ohio-2306. It was our conclusion that the decree did not dispose of all the property at issue. *Id.* at ¶ 9. Further, this Court expressed concern that the trial court had not valued certain items of property, had not classified all the property as marital or separate, and had not set forth its findings of fact where appropriate. *Id.* at ¶ 10.

{¶5} Following the dismissal of Husband's appeal, the trial court held two separate hearings to address issues of property division and valuation. The parties presented additional evidence at the hearings, and the trial court ultimately issued two separate judgment entries. The first entry addressed the concerns raised by this Court on appeal and contained detailed findings, which the trial court incorporated into its second entry. The second entry was an amended divorce decree.

{¶6} Husband now appeals from both entries and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS PROPERTY DIVISION BY ASSIGNING DIFFERENT VALUATION DATES TO DIFFERENT ASSETS OF THE PARTIES.

{¶7} In his first assignment of error, Husband argues that the trial court erred in its valuation of a jet boat, two jet skis, a minibike, three four-wheelers, and twelve go-carts. He argues that the court relied on inflated purchase prices to value those items rather than valuing them as of the date of the first remand hearing. Upon review, this Court rejects Husband's argument.

{¶8} During a divorce proceeding, a trial court must classify property as marital or separate and value the property with reference to the duration of the marriage. *Hunt v. Hunt*, 9th Dist. Lorain No. 21CA011720, 2022-Ohio-412, ¶ 6. "[T]he court must choose a specific date for purposes of valuation and use it consistently * * *." *Elliot-Thomas v. Lewis*, 9th Dist. Summit No. 29164, 2019-Ohio-3870, ¶ 7. It is expected that the court will "place a value on the major assets owned by the parties." *Zona v. Zona*, 9th Dist. Medina No. 05CA0007-M, 2005-Ohio-5194, ¶ 5. Nevertheless, the overarching goal is to create an equitable distribution. *Hunt* at ¶ 8. A trial court "cannot be expected to value every piece of furniture, lawn equipment, and other personal property accumulated during a marriage[,]" and "[i]t is not appropriate to consider the disposition of only a few items taken out of context of [an] entire award." *Kohler v. Kohler*, 9th Dist. Lorain No. 96CA006313, 1996 WL 455850, *3 (Aug. 14, 1996). A trial court has discretion in determining how to value a marital asset and in fashioning an equitable division of marital property. *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 34; *Stepp v. Stepp*, 9th Dist. Medina No. 03CA0052-M, 2004-Ohio-1617, ¶ 10. Consequently, this Court will not overturn those discretionary determinations absent an abuse of discretion. *Hunt* at ¶ 8; *Fetzer* at ¶ 34.

{¶9} The trial court found that the duration of the parties' marriage was from June 26, 1998, until December 8, 2019.[1] It ultimately valued their "Jet Boat/Ski & related equipment" at $40,000 and their "Go-Carts, Mini-bikes[,] Four-wheelers, [and] dirt bikes" at $15,000. Regarding the boat, jet skis, and related equipment, the court found that neither party had included those items on their 2019 affidavits of property. The court also found that Husband had not included the items on his 2016 affidavit of property, and Wife had included the items on her 2016 affidavit of property but had not valued them. The court noted that, at trial, Wife estimated the items were worth at least $40,000 while Husband claimed to have purchased them for about a third of that amount. The court further noted that Husband testified to having already sold the items at auction, in violation of the court's restraining order, for less than $2,000.

{¶10} Regarding the go-carts, mini-bikes, four-wheelers, and dirt bikes, the trial court found that neither party had included those items on their 2016 or 2019 affidavits of property. The court noted that, at trial, Wife had valued the items at $15,000. Meanwhile, at the remand hearing, Husband claimed the parties had never owned any dirt bikes and testified that Wife had overvalued the remaining items in light of their current condition. Husband estimated that, at best, the remaining items were worth about $5,700.

{¶11} In valuing the parties' property, the trial court noted that neither party had provided it with any third-party appraisals for their business, their real property, their vehicles, or their personal property. The parties had a significant amount of property to be divided including their landscaping business, landscaping equipment kept in Virginia, landscaping equipment kept in

---

[1] The trial court selected December 8, 2019, as the end date for the parties' marriage because it found that December 8th was the date of the first hearing it conducted upon remand from this Court. The actual date of the first remand hearing was December 11, 2019. Neither party has challenged the discrepancy, however, so this Court will rely on the December 8th date in conducting its review.

Ohio, the home in Cuyahoga Falls, the home in Virginia, six separate vehicles, multiple bank accounts, and personal property at each residence. That personal property included several trailers, the boat and related equipment, at least twelve go-carts, multiple golf carts, multiple four-wheelers, and numerous appliances, home goods, and other household and personal items. The trial court indicated that its valuation and division of the property had been "an arduous task." Importantly, it also specifically contrasted the credibility of Wife's testimony with that of Husband's and found that Husband had engaged in financial misconduct when he sold property at auction in violation of the court's restraining order. *See* R.C. 3105.171(E)(4) (allowing a court to compensate a spouse "with a distributive award or with a greater award of marital property" when the other spouse engaged in financial misconduct). While the court found Wife's testimony credible, it determined that Husband "was evasive, unwilling to respond to questions[,] and his overall testimony was unbelievable." The court ultimately divided the marital property between the parties and included the value of the "Jet Boat/Ski & related equipment" and the value of the "Go-Carts, Mini-bikes[,] Four-wheelers, [and] dirt bikes" in Husband's column of assets as part of its overarching, equitable distribution of the assets. The trial court's distribution led to a difference of less than $5,500 between the parties with Wife receiving just under $286,000 worth of assets and Husband receiving slightly more than $291,000 worth of assets. To achieve an equal distribution, the court ordered Husband to pay Wife $2,704.03.

{¶12} Husband argues that the trial court erred when it valued the jet boat, two jet skis, minibike, three four-wheelers, and twelve go-carts. According to Husband, the values the court selected did not represent the value of those items on the valuation date the court chose (i.e., the date of the first remand hearing). Husband points to his own testimony, wherein he stated that (1) he had purchased the boat and related items for $12,500 and had netted less than $2,000 for them

at auction, and (2) the minibike, go-carts, and four wheelers were in such poor condition that they were worth no more than $5,700. Husband argues that the trial court erred by relying on Wife's inflated valuations. He further argues that the court's valuation error draws into question its overall property division.

{¶13} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it valued the "Jet Boat/Ski & related equipment" and the "Go-Carts, Mini-bikes[,] Four-wheelers, [and] dirt bikes." *See Fetzer*, 2014-Ohio-747, at ¶ 34. It was Wife's opinion that the value of the jet boat was $40,000. She described it as a "beautiful" six-person boat that was powered by two removable jet skis, which could be detached and ridden while the boat was anchored. While Husband claimed to have paid far less for the boat, he did not present the court with a purchase receipt or any appraisal information. The only valuation evidence he presented to refute Wife's testimony was his own testimony that the boat was worth less. Moreover, at the time of trial, Husband stated that he could not remember when he bought the boat, he could not remember what he paid for it, and he had "no records to show the true value of that." Husband's testimony changed at the remand hearing wherein he testified that the boat was worth $24,000 brand new, he paid $12,500 for it, and, "if memory serve[d] [him] right," it sold at auction for around $1,600. As previously noted, the trial court specifically found that Husband engaged in financial misconduct and that his testimony was evasive and unbelievable. Husband has not challenged the trial court's finding of financial misconduct on appeal or its conclusion that the testimony he offered was evasive and unbelievable. This Court will not formulate arguments on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). The record reflects that the court accepted Wife's valuation testimony because it found her more credible.

{¶14} Regarding the "Go-Carts, Mini-bikes[,] Four-wheelers, [and] dirt bikes," Wife testified that the parties had about twenty-five go-carts, multiple four-wheelers, and a few dirt bikes. She did not value the four-wheelers, the mini-bikes, or the dirt bikes but opined that the go-carts were worth $15,000. Meanwhile, at the remand hearing, Husband testified that he believed the four-wheelers were worth $2,000 "based on the purchase price[,]" the go-carts in his possession were worth between $1,200 and $3,600, and he had one minibike that might be worth $100. He testified that he thought he had twelve go-carts in his possession and that one go-cart was in Wife's possession. At trial, however, Husband testified that he did not know "the exact number" of go-carts he and Wife owned. He also said he was "not going to speculate" about the number of go-carts he gave the auctioneer to sell. Finding his testimony evasive and unbelievable, the trial court valued the go-carts, mini-bikes, four-wheelers, and dirt bikes collectively at $15,000 (i.e., the value Wife assigned to the go-carts).

{¶15} As previously noted, a trial court "cannot be expected to value every piece of furniture, lawn equipment, and other personal property accumulated during a marriage[,]" and "[i]t is not appropriate to consider the disposition of only a few items taken out of context of [an] entire award." *Kohler*, 1996 WL 455850, at *3. The record reflects that the trial court valued the "Jet Boat/Ski & related equipment" and "Go-Carts, Mini-bikes[,] Four-wheelers, [and] dirt bikes" based upon the limited valuation testimony the parties provided, its conclusion that Wife's testimony was more credible than Husband's, and its unchallenged finding that Husband engaged in financial misconduct. Husband has not shown that the trial court went so far as to abuse its discretion by relying on Wife's testimony and valuing the foregoing items as part of its overarching scheme to achieve an equitable distribution of the parties' property. *Compare Hunt*, 2022-Ohio-412, at ¶ 19-20 (reversing distribution of marital property where neither party had provided the

court with any evidence to allow for valuation of significant marital asset). As such, Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED AS A MATTER OF LAW BY VALUING THE PARTIES' BUSINESS AS OF 2013, YEARS PRIOR TO THE FILING OF THE DIVORCE COMPLAINT.

{¶16} In his second assignment of error, Husband argues that the trial court abused its discretion when it valued the parties' landscaping business. According to Husband, the court ignored his testimony about the current worth of the business and relied on Wife's outdated valuation testimony. For the following reasons, this Court rejects Husband's argument.

{¶17} Because Husband's second assignment of error also pertains to valuation, this Court incorporates the law and standard of review set forth in Husband's first assignment of error. *See* Discussion of Husband's First Assignment of Error, *supra*. A trial court has discretion in determining how to value a marital asset and in fashioning an equitable division of marital property. *Fetzer*, 2014-Ohio-747, at ¶ 34; *Stepp*, 2004-Ohio-1617, at ¶ 10. Consequently, this Court will not overturn those discretionary determinations absent an abuse of discretion. *Hunt* at ¶ 8; *Fetzer* at ¶ 34.

{¶18} The trial court valued the parties' landscaping business based strictly on the estimated value of the equipment used to operate the business. The court found that equipment to be worth $85,000. As detailed below, the court reached its valuation decision based on the limited valuation evidence before it, the fact that it found Wife's testimony more credible than Husband's, and its determination that Husband had engaged in financial misconduct.

{¶19} The trial court noted that neither party secured an appraisal for the business nor included any value for it on their respective affidavits of property. At trial, Wife testified that the

business routinely had earned a net income of between $200,000 to $250,000 each year. She also testified that the fair market value of the equipment used to operate the business was between $75,000 and $90,000. The trial court found Wife's experience as the record and bookkeeper for the business for over twelve years meant she was able to offer credible testimony as to the equipment necessary to run the business and the worth of that equipment.

{¶20} The trial court found Husband's testimony about the business to be evasive and unbelievable in several respects. The court noted that, with respect to the equipment, Husband claimed he had sold it for $500 at auction in 2016 before incurring a $27,545.86 debt to buy more equipment the following year. The court specifically found that Husband engaged in financial misconduct when he sold the equipment because the sale violated the court's restraining order against the disposition of property. Further, the court found that Husband had limited auction records, failed to produce any purchase records, gave conflicting testimony as to whether he had actually sold all of the equipment, and lied to a magistrate about not having property upon which to store his equipment. With respect to the business itself, the court found that Husband claimed the value of the business was equal to his income but offered evasive and unhelpful answers in that regard. The court noted that Husband claimed not to know what his income was at trial, testified his landscaping work was "hit and miss[,]" could not recall if he had any commercial contracts, and did not know how many clients he had. Meanwhile, at the remand hearing, Husband claimed that significant expenses meant the business had only netted an amount between $0 and $25,000 the last several years. The trial court ultimately determined that Husband had intentionally concealed financial information about the business and his income from Wife and the court. Based on the lack of any appraisals, the limited valuation testimony presented, and the

credibility and financial misconduct determinations the trial court made, it valued the landscaping business at $85,000.

{¶21} Husband argues that the trial court erred when it valued the business. According to Husband, the court adopted Wife's "flawed valuation methodology" and ignored testimony that he sold the landscaping equipment and incurred a debt after having to purchase new equipment. Husband argues that Wife valued the business according to outdated gross business receipts that did not reflect any of the expenses associated with the business. He also argues that it was error for the court to rely on Wife's testimony because she had not been involved with the business since 2013. According to Husband, the court failed "to properly consider the changes in equipment condition and values as well as the fact that Wife did not take into account the expenses of the business or provide any documentation to show that [his] expenses were illegitimate * * *."

{¶22} As the trial court noted, neither party had the business appraised, and there was a significant disparity in the valuation testimony they offered during the proceedings. At trial, Wife testified that Husband routinely underreported their business profits and estimated that the business netted between $200,000 to $250,000 each year after paying expenses. She testified that the parties owned a significant amount of landscaping equipment, used commercial-grade mowers, salt spreaders, blowers, weed eaters, augers, and edgers and, collectively, the equipment used to run the business would be worth at least $75,000 to $90,000. Meanwhile, at trial, Husband was unable to provide the court with any estimates as to the value of the business or the profits it generated. He testified that his tax returns were several years overdue, and he claimed to be unable to testify about his income or the value of the business without that information. It was Husband's testimony that he injured his back shortly before the trial, so he was not doing "a whole lot of anything" and did not own any landscaping equipment outright. He testified that he gave the parties' landscaping

equipment to an auctioneer to sell in 2016, but he could not say what equipment he gave the auctioneer or whether it had sold. He also admitted that some of his equipment was still on his property but could not say exactly what that equipment was. Nevertheless, at different points during the trial, Husband mentioned still having four scag mowers sitting on his property and estimated that scag mowers typically sell for a price between $3,000 and $18,000.

{¶23} At the remand hearing, Husband introduced auction receipts and testified that he believed all the landscaping equipment he had given the auctioneer had been sold for less than $500. He testified that he purchased new equipment in 2017 on credit, so he did not own it. He was unable to produce any paperwork for that purchase, however, claiming that the seller had extended him credit on "just the goodness of [his] word" because they had an established business relationship. Husband produced his most recent tax returns at the remand hearing, and the tax returns reflected an income of $24,158, $0, and $22,000, for 2016, 2017, and 2018, respectively. The tax returns listed significant expenses related to repairs, maintenance, supplies, contract labor, and other expenses. Although the trial court asked Husband to supplement the record with evidence to document the expenses he claimed on his tax returns, Husband never did so.

{¶24} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it valued the parties' landscaping business at $85,000. *See Fetzer*, 2014-Ohio-747, at ¶ 34. Husband essentially valued the business at an amount between $0 and $25,000 even though the business had been successfully operating since 2001, it had provided a very comfortable standard of living for the parties, and the equipment used to run it was worth a significant sum of money. It is apparent from the record that the trial court did not find credible Husband's valuation testimony or his claim that the business was not currently earning a profit. *See Horak v. Decker*, 9th Dist. Summit No. 28731, 2018-Ohio-3659, ¶ 50. Moreover, the court specifically found that

Husband engaged in financial misconduct when he sold equipment at auction. *See* R.C. 3105.171(E)(4) (allowing a court to compensate a spouse "with a distributive award or with a greater award of marital property" when the other spouse engaged in financial misconduct). Husband has not addressed the trial court's finding of financial misconduct, and this Court will not formulate an argument on his behalf. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at \*8. Rather than adopt Wife's higher profit estimation, the court elected to value the business based on Wife's estimation of the worth of the equipment routinely used to run it. Given the unique facts and circumstances outlined above, this Court cannot conclude that the trial court's decision to do so amounted to an abuse of discretion. Accordingly, Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS SPOUSAL SUPPORT AWARD BY IMPUTING INCOME TO HUSBAND.

{¶25} In his third assignment of error, Husband argues that the trial court abused its discretion when it determined his spousal support obligation. Specifically, he argues that the court erred because it imputed income to him rather than relying on evidence of his actual income. For the following reason, this Court rejects his argument.

{¶26} In general, "[t]his Court reviews a trial court's award of spousal support under an abuse of discretion standard." *Wells v. Wells*, 9th Dist. Summit No. 25557, 2012-Ohio-1392, ¶ 22. "A trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n) '[i]n determining whether spousal support is appropriate and reasonable,' and in determining the nature, amount, terms, and duration of a spousal support payment." *Lee v. Lee*, 9th Dist. Lorain No. 17CA011235, 2019-Ohio-61, ¶ 9, quoting R.C. 3105.18(C)(1). "These factors include '[t]he income of the parties, from all sources' and '[t]he relative earning abilities of the parties[.]'" *Lee* at ¶ 9, quoting

R.C. 3105.18(C)(1)(a), (b). "Unlike the child support statute, the spousal support statute does not direct the court to consider the 'potential income' of a spouse * * *." *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 16, quoting R.C. 3119.01(C)(5). Nor does it "direct[] the trial court to 'impute' income" to a spouse. *Collins* at ¶ 19. Under R.C. 3105.18(C)(1)(a), "'the court is charged with examining the actual income of the parties from all sources and income derived from any divided property.'" *Ostry v. McCarthy*, 9th Dist. Summit No. 29753, 2021-Ohio-2228, ¶ 21, quoting *Collins* at ¶ 16. Under R.C. 3105.18(C)(1)(b), the trial court must "juxtapose one spouse's earning ability against the other spouse's earning ability" to identify any disparities. *Collins* at ¶ 19. "'[T]he end result is * * * to consider and weigh the spouses' relative earning abilities along with the other factors in arriving at reasonable spousal support both as to amount and term.'" *Lee* at ¶ 9, quoting *Collins* at ¶ 19.

{¶27} In considering the factors set forth in R.C. 3105.18(C)(1) and in fashioning its spousal support award, the trial court ultimately determined that Husband's income at the time of trial was $200,000 per year and his income at the time of the remand hearing was $214,487.34. The court noted that Husband's tax returns reflected a gross income of $215,253 in 2016, $225,666 in 2017, and $202,543 in 2018 but included significant expenses. As a result of those expenses, Husband claimed his actual income was $24,158 in 2016, $0 in 2017, and $22,435 in 2018. Though the trial court asked Husband to provide documentation in support of the significant expenses he claimed (e.g., a contract labor expense of $60,339 for 2018), Husband never did so. The court specifically determined that, as the party claiming a business expense, it was Husband's burden to establish his expenses through suitable documentation.

{¶28} The court also found Husband's testimony about his limited income to be inconsistent with the lifestyle he enjoyed. It noted that Husband had routinely paid Wife's credit

card bills, the utilities at the Cuyahoga Falls home, and other expenses for her and the children until she filed for divorce, at which point he stopped paying for those things and claimed he was unable to afford support payments. The court noted that Husband purchased a home in Virginia in 2017 for $210,000, as well as almost $30,000 in lawn equipment. While Husband testified that he used income from the business to pay for the lawn equipment, the court emphasized that he also included the lawn equipment as an outstanding debt on his affidavit of property. The court found that Husband was evasive about his income and that his tax returns did not reflect his actual income. It determined that Husband frequently operated on a cash basis, failed to document his claimed expenses, and underreported his earnings. The trial court found credible Wife's testimony that the business routinely grossed between $300,000 to $350,000 per year and netted between $200,000 to $250,000 per year. It ultimately found that Husband's income at the time of trial was $200,000 and his income at the time of the remand hearing was $214,487.34. To arrive at the latter figure, the court averaged Husband's reported gross income for the years 2016, 2017, and 2018.

{¶29} Husband argues that the trial court erred in its spousal support determination because it "imputed" his income figures. He argues that the court based its decision strictly on his gross income without considering his "legitimate business expenses" and the "financial reality of the situation * * *." Further, he argues that the court never found he was capable of earning the amount of income the court imputed. Because the trial court did not rely on his actual income and did not properly consider the relative earning abilities of the parties, Husband argues, its spousal support determination amounts to an abuse of discretion. Alternatively, Husband argues that spousal support must be recalculated in light of the errors the trial court committed when valuing

the parties' jet boat, two jet skis, a minibike, three four-wheelers, twelve go-carts, and landscaping business. *See* Discussion of Husband's First and Second Assignments of Error, *supra*.

**{¶30}** Although the trial court used the word "imputed" in its spousal support determination and its choice of that word "is unfortunate, we nonetheless cannot say that [Husband] has demonstrated that the trial court committed reversible error in [determining] [his] income * * *." *Ostry*, 2021-Ohio-2228, at ¶ 23. That is because the record does not support the conclusion that the trial court actually imputed income to Husband for purposes of its spousal support award. The trial court did not determine that Husband was *capable* of earning the income it selected (i.e., $200,000 at the time of trial and $214,487.34 at the time of the remand hearing). It determined that Husband had earned that money and was being untruthful when he claimed to have earned significantly less. Husband has not addressed any of the court's findings that he engaged in financial misconduct, that he attempted to cloak his income, or that he failed to set forth any proof to establish his expenses. He argues that the trial court failed to consider his "legitimate business expenses" without addressing the court's conclusion that he failed to establish the legitimacy of those expenses. As the appellant, it is Husband's burden to demonstrate error on appeal and to substantiate his arguments. *See Figetakis v. My Pillow, Inc.*, 9th Dist. Summit No. 29843, 2022-Ohio-1078, ¶ 5. This Court will not formulate an argument on his behalf. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at *8.

**{¶31}** Notably, in calculating income for purposes of spousal support, "the objective is not to ascertain a precise income figure which can be employed in a worksheet." *Collins*, 2011-Ohio-2087, at ¶ 16. "Rather, a spouse's actual income from all sources is but one of many factors used to arrive at reasonable support to be given from one spouse to the other." *Id.* The record here reflects that the trial court arrived at a spousal support determination based upon the evidence in

the record, its consideration of all the factors set forth in R.C. 3105.18(C)(1), the fact that it found Wife's testimony credible, and the fact that it found Husband's testimony to be evasive, unbelievable, and intentionally misleading. Husband has not shown that the court went so far as to abuse its discretion when it considered his income to be $200,000 at the time of trial and $214,487.34 at the time of the remand hearing for purposes of determining his spousal support obligation. This Court rejects his argument to the contrary. Likewise, because we previously determined that the trial court did not err in valuing the parties' jet boat, two jet skis, a minibike, three four-wheelers, twelve go-carts, and landscaping business, we reject Husband's alternative argument that spousal support must be recalculated based on errors in those valuations. Husband's third assignment of error is overruled.

## III.

{¶32} Husband's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

THOMAS L. ERB, JR., Attorney at Law, for Appellee.