[Cite as *Ventura v. Ventura*, 2026-Ohio-981.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

ANGELA VENTURA

    Appellee

    v.

MATTHEW J. VENTURA

    Appellant

C.A. No.      2025CA0012-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    21DR0264

DECISION AND JOURNAL ENTRY

Dated: March 23, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1} Appellant-Defendant Matthew Ventura appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Matthew and Appellee-Plaintiff Angela Ventura were married on December 17, 2010. One child was born as issue of the marriage. Angela filed a complaint for divorce on June 11, 2021. Matthew filed an answer and counterclaim for divorce on November 2, 2021.

{¶3} The matter proceeded to trial on April 29 and 30, and May 1, 2024. The trial court filed a judgment entry decree of divorce on July 11, 2024. Matthew appealed. This Court dismissed the attempted appeal for a lack of a final appealable order. *Ventura v. Ventura*, 2024CA0067-M (9th Dist. Nov. 19, 2024).

{¶4} Upon remand, the trial court issued a second final judgment entry decree of divorce on January 10, 2025.

{¶5} Matthew appeals, raising five assignments of error. We have reordered and combined some of the assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT THE DURATION OF THE MARRIAGE BETWEEN THE PARTIES WAS DECEMBER 17, 2010 TO APRIL 29, 2024.**

**ASSIGNMENT OF ERROR V**

**THE TRIAL COURT ERRED AND DESIST [sic.] DISCRETION BY DIVIDING THE ASSETS AND LIABILITIES OF THE PARTIES BY FAILING TO DETERMINE A DE FACTO TERMINATION OF THE MARRIAGE.**

{¶6} In his fourth assignment of error, Matthew argues that the trial court erred in determining the duration of the marriage between the parties. In his fifth assignment of error, Matthew contends the trial court erred by failing to determine a de facto termination date of the marriage between the parties. We disagree.

{¶7} Before dividing marital property and determining the amount of any distributive award, a trial court must determine the duration of the marriage. *Tustin v. Tustin*, 2015-Ohio-3454, ¶ 17 (9th Dist); *see* R.C. 3105.171(F)(1). "This determination 'is critical because the duration of the marriage will determine the valuation of the marital assets.'" *Hopson v. Hopson*, 2025-Ohio-3257, ¶ 5 (9th Dist.), quoting *Hunt v. Hunt*, 2022-Ohio-412, ¶ 6 (9th Dist.).

{¶8} In this case, the trial court determined the duration of the parties' marriage was from December 17, 2010—the date of the parties' marriage—through April 29, 2024—the first day of the final hearing in their action for divorce. "This Court reviews [a] trial court's determination as to the duration of the marriage, particularly as it relates to the termination date of the marriage, for an abuse of discretion." *Tustin* at ¶ 6, citing *Budd v. Budd*, 2011-Ohio-565, ¶ 8

(9th Dist.). "[T]his Court will not reverse [a] trial court's determination as to the duration of the marriage unless the finding is unreasonable, arbitrary, or unconscionable." *Tustin* at ¶ 6, citing *Schrader v. Schrader*, 1998 WL 46757, *3 (9th Dist. Jan. 21, 1998).

{¶9} R.C. 3105.171(A)(2)(a) provides,

"During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

This Court has previously recognized that the statute, "creates 'a presumption that the proper date for termination of marriage is the date of the final divorce hearing.'" *Budd* at ¶ 8, quoting *Bowen v. Bowen*, 132 Ohio App.3d 616, 630, (9th Dist. 1999), quoting *Kohler v. Kohler*, 1996 WL 455850, *5 (9th Dist. Aug. 14, 1996.). "[W]hile the statute permits the trial court to select the date of separation as a de facto termination date in place of the statute's presumption, such action is clearly not mandated[.]" *Budd* at ¶ 8, quoting *Bowen* at 630. Based on the plain language of the statute, a trial court must first determine if the use of the statutorily presumptive date of termination of marriage is inequitable before it may consider whether a different date of termination is appropriate.

{¶10} Upon review, we conclude that Matthew has not shown the trial court abused its discretion in determining the duration of the parties' marriage. First, the trial court determined the duration of the parties' marriage in compliance with R.C. 3105.171(A)(2)(a), which defines "[d]uring the marriage" as "the period of time from the date of the marriage through the date of

the final hearing in an action for divorce or in an action for legal separation . . . ."  Second, the trial court did not find that the use of April 29, 2024—the first day of the final hearing—would be inequitable for the purposes of dividing the parties' assets.  Pursuant to R.C. 3105.171(A)(2)(b), a trial court *may* determine a de facto termination *if* the trial court first determines that the use of either or both of those dates would be inequitable.

{¶11}  Here, Matthew does not dispute the parties were married on December 17, 2010, or that April 29, 2024, was the first day of the final hearing in this case.  On appeal, he fails to explain any effect the trial court's use of the statutorily presumptive duration of the parties' marriage had upon the division of assets, let alone why that effect was inequitable under the circumstances.  *See* R.C. 3105.171(A)(2)(b); *see also Budd*, 2011-Ohio-565, at ¶ 14 (9th Dist.), citing R.C. 3105.171(A)(2)(b) and *Berish v. Berish*, 69 Ohio St.2d 318, 319-20 (1982) ("Part and parcel to establishing the proper termination date for a marriage is to consider the effect that date will have upon the equitable division of assets.").  Matthew does state in his merit brief that "about May 1, 2021" is the appropriate de facto date the parties' marriage terminated.  However, Matthew does not explain why that specific date would be equitable under the circumstances here.  We also note that a review of the record shows Matthew argued in the trial court that two other dates would be appropriate dates for the de facto termination of the parties' marriage.  During trial, Matthew argued in favor of the use of May 21, 2021.  However, in his proposed findings of fact and conclusions of law, he argued in favor of the use of May 4, 2021.

{¶12}  Regardless, Matthew has not developed an argument to explain why the trial court's use of April 29, 2024—the statutorily presumptive date the parties' marriage terminated—created an inequitable division of the parties' assets.  *See id*., *see also Budd* at ¶ 14, citing R.C. 3105.171(A)(2)(b) and *Berish*, at 319-20.  When an appellant fails to develop an argument in

support of his assignment of error, this Court will not create one for him. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

{¶13} Matthew's fourth and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR III

**MATTHEW VENTURA WAS IMPROPERLY DENIED THE OPPORTUNITY TO CALL A *BONA FIDE* REAL ESTATE APPRAISER TO TESTIFY ABOUT THE VALUE OF THE WORCHESTER PROPERTY.**

{¶14} In his third assignment of error, Matthew contends the trial court erred when it denied him the opportunity to present expert testimony from a real estate appraiser regarding his appraisal of certain real estate. We disagree.

{¶15} "It is within the trial court's discretion to manage discovery matters, including the admissibility of expert testimony." *Morehart v. Snider*, 2009-Ohio-5674, ¶ 41 (9th Dist.). This Court will not overrule a trial court's decision regarding the admissibility of expert testimony absent an abuse of discretion. *Id.* Consequently, a party alleging error must demonstrate that the trial court's actions were "'unreasonable, arbitrary, or unconscionable.'" *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} On November 6, 2023, the trial court filed a Case Management Order setting a trial date in December 2023. The case management order included a provision providing that "At least fourteen (14) days prior to Trial the parties shall submit[,]" amongst other documents, an exhibit list and a witness list. Regarding the exhibit list, the case management order provided:

> Exhibit List. . . . The parties shall exchange all documents intended to be used as Exhibits . . . . Unless leave of court is granted, no exhibit will be permitted to be introduced at the trial if not properly identified and exchanged, unless the Court determines that the exhibit is needed and could not have been reasonably anticipated prior to the trial or that exceptional circumstances warrant introduction.

Regarding the witness list, the case management order provided:

> Witness List. . . . Unless leave of court is granted, no witness will be permitted to testify at the trial if his or her name is not provided to opposing counsel at this time, unless the Court determines that the witness is needed to offer rebuttal testimony which could not have been reasonably anticipated prior to the trial or that exceptional circumstances warrant amendment of one or both of the witness lists.

The case management order also included the following warning:

> **FAILURE TO TIMELY COMPLY WITH THIS ORDER SHALL RESULT IN THE IMPOSITION OF APPROPRIATE SANCTIONS, INCLUDING THE IMPOSITION OF MONETARY SANCTIONS, EXCLUSION OF EVIDENCE, OR DISMISSAL OF THE ACTION.**

{¶17} The trial court's case management order did not include a separate provision regarding expert witnesses. However, Civ.R. 26(B)(7)(c) provides that "a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel." *See* Civ.R. 75(A) (the Ohio Rules of Civil Procedure apply in actions for divorce). The rule further provides that "[u]nless good cause is shown, all reports . . . must be supplied no later than thirty days prior to trial." Civ.R. 26(B)(7)(c).

{¶18} In this case, Matthew sought to present expert testimony from a real estate appraiser on the second day of trial regarding the values of two pieces of real estate owned by the parties. Angela objected on the basis that Matthew (1) had not filed a witness list identifying the expert and (2) had not provided the expert reports to Angela's legal counsel. In response, Matthew asserted that either his legal counsel or his legal counsel's assistant had provided the expert reports to Angela's legal counsel immediately upon receiving them in October of 2023. Angela disputed this claim and asserted that neither Matthew's legal counsel nor his legal counsel's assistant had ever provided the expert reports. The trial judge indicated on the record that he was inclined to sustain the objection unless Matthew provided proof that his legal counsel provided the expert reports and the expert's name to Angela. Matthew was unable to provide such proof.

{¶19} The trial court sustained Angela's objection on the basis that Matthew had failed to comply the trial court's case management order. The trial court concluded Matthew had (1) failed to provide the expert report to opposing counsel, (2) failed to file witness list at least fourteen days before trial, and (3) failed to file an exhibit list at least fourteen days before the trial.

{¶20} On appeal, Matthew does not contend that he complied with the trial court's case management order. Matthew also does not assert that he provided Angela's legal counsel with the expert's written report and/or the expert's name. Instead, Matthew first asserts that the case management order did not apply to the continued trial. Matthew next claims the trial court abused its discretion in enforcing the order against him because neither party fully complied with the case management order. Matthew asserted these same arguments in a "Motion for Reconsideration of Decision to not Permit Matthew Ventura to Call his Expert Witness to Testify about Real Estate Appraisals" filed immediately preceding the start of the third day of trial.

{¶21} In addition to the arguments above, Matthew asserted in his motion for reconsideration that if the case management order did apply, the trial court should "continue the trial for a few days" so that Angela could review the expert report. Matthew claimed Angela should have been aware that Matthew intended to present expert testimony because (1) Matthew's April 19, 2024 "Response to Angela's List of Issues Remaining" included a statement that "[b]oth properties have been appraised and we will offer evidence about the value at the time of trial[,]" and (2) Matthew's proposed stipulations emailed to Angela's legal counsel on April 26, 2024, included a statement that Matthew had specific real estate appraised. In addition to several documents already in the record, Matthew attached (1) the purported appraisal of a condo as Exhibit A, (2) the purported appraisal of real estate identified by the parties as the Worchester Lane property as Exhibit B, (3) a purported email exchange between the appraiser and a member

of Matthew's legal counsel's office, (4) a purported email exchange between Matthew's legal counsel and Angela's legal counsel regarding proposed stipulations, and (5) the purported proposed stipulations.

{¶22} When the trial commenced for the third day, Angela orally opposed the motion for reconsideration. First, Angela disputed Matthew's contention that she had not complied with the trial court's case management order. Angela pointed to the trial court's docket to show that she had filed a witness list on March 13, 2023, and an exhibit list on September 29, 2023. Next, Angela argued that regardless of the trial court's case management order, Matthew had failed to comply with the trial court's local rules regarding expert witnesses, lay witnesses, and exhibits. Angela acknowledged that Matthew had sent proposed stipulations. However, Angela noted Matthew had sent the proposed stipulations on a Friday afternoon, three days before the start of trial. Angela further noted that those proposed stipulations did not include the purported expert reports as exhibits. Finally, Angela argued that case management order applied to the continued trial.

{¶23} Following the parties' oral presentation, the trial court rejected Matthew's arguments, concluding that a case management order "doesn't become ineffective just because the trial date is continued." The trial court also stated that Matthew appeared to admit in his motion for reconsideration that his legal counsel had not located an email indicating that he had provided the expert witness's name or reports to Angela's legal counsel. The trial court then noted

> the practice of discovery is to prevent individuals from ambushing the other side, and I think that if [Angela's legal counsel] had received notice that an expert witness was going to appear on the values of real estate and the . . . report was provided, he might have taken steps to obtain an expert of his own.

The trial court filed an order denying Matthew's motion for reconsideration that same day.

{¶24} Upon review, we conclude that Matthew has not shown the trial court abused its discretion when it denied him the opportunity to present expert testimony from a real estate

appraiser regarding the parties' real estate on the basis that he failed to comply with the trial court's case management order. Matthew does not dispute that he failed to provide Angela's legal counsel with the expert's written report and/or the expert's name. The trial court filed a case management order advising the parties that they were required to file a witness list and/or an exhibit list at least fourteen days prior to trial. The order included a bold-faced notice that failure to comply with the order would result in the imposition of appropriate sanctions, including the exclusion of evidence. Moreover, Civ.R. 26(B)(7)(c) provides that unless good cause is shown, "a party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel."

{¶25} Matthew's third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRONEOUSLY DIVIDED THE MARITAL PROPERTY OF THE PARTIES.**

{¶26} In his first assignment of error, Matthew contends that the trial court erred in dividing the parties' marital interest in certain real estate identified by the parties as the Worchester Lane Property. Specifically, Matthew contends that the trial court failed to properly credit him for all marital payments made toward the mortgage. We disagree.

{¶27} "During a divorce proceeding, a trial court must classify property as marital or separate and value the property with reference to the duration of the marriage." *Kiernan v. Ward*, 2022-Ohio-1303, ¶ 8 (9th Dist.), citing *Hunt*, 2022-Ohio-412, at ¶ 6 (9th Dist.). "The trial court maintains 'broad discretion when fashioning its division of marital property.'" *Barlow v. Barlow*, 2009-Ohio-3788, ¶ 13 (9th Dist.), quoting *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994). "Our

review is limited to a determination of whether the trial court's division of property amounted to an abuse of discretion." *Fletcher v. Fletcher*, 1995 WL 29008, \*2 (9th Dist. Jan. 25, 1995).

{¶28} Pursuant to R.C. 3105.171(A)(6)(a)(iii), "[s]eparate property" includes passive appreciation on the separate property of one spouse during the marriage. "'If the evidence indicates that the appreciation of the separate property is not due to the input of [either spouse's] labor, money, or in-kind contributions, the increase in the value of the [property] is passive appreciation and remains separate property.'" (Emphasis omitted.) *Ray v. Ray*, 2003-Ohio-6323, ¶ 6 (9th Dist.), quoting *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998), citing R.C. 3105.171(A)(6)(a)(iii). "'[A]ppreciation that results from an increase in the fair market value of separate property due to its location or inflation is considered passive income.'" *Ray* at ¶ 6, quoting *Polakoff v. Polakoff*, 2000 WL 1121799, \* 4 (11th Dist. Aug. 4, 2000). Nonetheless, this Court has previously held that any reduction in the amount of the mortgage *principal* during the marriage is marital property subject to equitable division between the parties. *Ray* at ¶ 8.

{¶29} Regarding the Worchester Lane Property, the trial court first found the property was Angela's separate property. The trial court then found that any appreciation in the property during the parties' marriage was due to market forces. Finally, the trial court found that during the parties' marriage there was a reduction in the principal balance of the mortgage in the amount of $46,891.71. Consequently, the trial court determined the marital portion of the equity in Worchester Lane Property was $46,891.71. The trial court concluded Matthew was entitled to half that amount, or $23,445.86.

{¶30} On appeal, Matthew does not dispute that Angela purchased the Worchester Lane Property before the parties were married and that she holds the property solely in her name. Matthew also does not dispute that any appreciation in the property's value was due to market

forces. Instead, Matthew argues the trial court erred by not concluding he was entitled to half of the *total payments* the parties made toward the mortgage during the marriage—or $27,236.70. Matthew does not point to any evidence in the record to support that amount. Regardless, it is not the total amount of payments made during the marriage that is subject to equitable division. Rather, it is the amount of any reduction in the mortgage *principal* during the marriage that is subject to equitable division. *See id.*

{¶31} Matthew raises no argument on appeal regarding any alleged reduction in the mortgage principal of the Worchester Lane Property during the parties' marriage. "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone*, 1998 WL 224934, at *8 (9th Dist. May 6, 1998); *see* App.R. 16(A)(7).

{¶32} Matthew's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT CLEARLY ERRED IN VALUING THE WORCHESTER PROPERTY.**

{¶33} In his second assignment of error, Matthew contends the trial court erred in determining the fair market value of the Worchester Lane property. We disagree.

{¶34} A trial court has discretion in determining how to value assets and in fashioning an equitable division of marital property. *See Ward*, 2022-Ohio-1303, at ¶ 8 (9th Dist.). "Consequently, this Court will not overturn those discretionary determinations absent an abuse of discretion." *Id.* at ¶ 34, citing *Hunt*, 2022-Ohio-412 at ¶ 8 (9th Dist.) and *Fetzer v. Fetzer*, 2014-Ohio-747, ¶ 34 (9th Dist.). "A trial court's determination as to the value of marital assets must be affirmed if it is supported by competent, credible evidence and is not otherwise an abuse of discretion." *Mercer v. Mercer*, 2024-Ohio-4827, ¶ 43 (9th Dist.).

{¶35} Here, the trial court found the Worchester Lane Property had a fair market value of $208,520.00. In making this determination, the trial court noted that Medina County Recorder records admitted as evidence in this case indicated the property had a total value of $208,520.00. The trial court further noted that Angela testified she had researched comparable sales in the neighborhood and that she believed that the fair market value of the property was $208,520.00.

{¶36} "A witness who offers an opinion regarding the value of property must ordinarily be qualified as an expert, but an owner of property may testify about its value without being so qualified." *Schoch v. Schoch*, 2019-Ohio-1394, ¶ 7 (9th Dist.), citing *Corrigan v. Corrigan*, 2001 WL 1044210, *2 (9th Dist. Sept. 12, 2001), citing *Tokles & Sons, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621 (1992), paragraphs one and two of the syllabus. "The basis for this rule is that an owner is presumed to be familiar with the property by virtue of 'having purchased or dealt with it.'" *Schoch* at ¶ 7, quoting *Tokles & Sons, Inc.* at paragraph two of the syllabus.

{¶37} A review of the record supports the trial court's valuation of the Worchester Lane Property. Angela expressly testified that she believed the Worchester Lane Property was worth $208,520.00. She acknowledged that this value was the same as the Auditor's valuation. She testified that she did not originally agree with this valuation and requested a reduction through the Auditor's office. The Auditor denied her request. Angela further testified that she researched the sales of comparable properties and determined that the Auditor's value was consistent with those sales. As such, she believed the Worchester Lane Property's value was $208,520.00.

{¶38} The trial court admitted as evidence Plaintiff's Exhibit 11. Matthew did not object to the admission of the exhibit. Angela testified that Plaintiff's Exhibit 11 was a document she "printed out from the County Auditor's site that shows the information regarding [the Worchester Lane] property and the value that they have it set at." The document states that the Worchester

Lane Property has a total value of $208,520.00. Matthew claims on appeal that "[t]his value is consistent with the tax value for this property." However, the document further states that the "Taxable Total Value" of the property is $72,980.00.

**{¶39}** Upon review, we conclude the trial court did not abuse its discretion in valuing Worchester Lane Property. The trial court's valuation is supported by competent, credible evidence. Accordingly, we must affirm. *See Mercer*, 2024-Ohio-4827, at ¶ 43 (9th Dist.).

**{¶40}** Additionally, even assuming that the trial court erred in its valuation of the Worchester Lane Property, we do not see how such valuation prejudiced Matthew. As noted above, the trial court found that the Worchester Lane Property was Angela's separate property and that any appreciation was entirely due to market forces. Matthew expressly conceded in his argument in support of his assignment of error one that the "trial court correctly found that 'all appreciation during the [Ventura] marriage on the [Worchester] home was a result of market forces.'" (Alterations in original.) Consequently, an increase in the value of the Worchester Lane Property would constitute passive appreciation and remain Angela's separate property. *See Ray*, 2003-Ohio-6323, at ¶ 6 (9th Dist.), quoting *Middendorf*, 82 Ohio St.3d at 401, citing R.C. 3105.171(A)(6)(a)(iii) (if appreciation of separate property "'is *not due* to the input of [either spouse's] labor, money, or in-kind contributions, the increase in the value of the [property] is passive appreciation and remains separate property.'").

**{¶41}** Matthew's second assignment of error is overruled.

III.

**{¶42}** All of Matthew's assignments of error are overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

BRENT L. ENGLISH, Attorney at Law, for Appellee.