[Cite as *Mullet v. Mullet*, 2017-Ohio-7152.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CATHERINE MULLETT | C.A. No.    28512 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| GERALD MULLETT | COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    DR-2013-11-3193 |

DECISION AND JOURNAL ENTRY

Dated: August 9, 2017

CALLAHAN, Judge.

{¶1}    Plaintiff-Appellant, Catherine Mullet ("Wife"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court reverses.

I.

{¶2}    Wife and Defendant-Appellee, Gerald Mullet ("Husband"), were married on September 15, 1990. Husband formed a company named Satellite Vision a few years before the parties married and, during the marriage, the two jointly operated the company. The parties purchased the property on which Satellite Vision is located from Husband's parents in the mid-1990s and also purchased land on Johns Road for the purpose of building their marital residence. There is no dispute that Satellite Vision represented the couple's sole source of income throughout the marriage.

{¶3}    In November 2013, Wife filed a complaint for divorce, and Husband counterclaimed for the same. A magistrate held a temporary orders hearing and, following the

hearing, ordered Husband to vacate the marital residence on or before January 1, 2014. The magistrate further ordered Wife to pay the mortgage, taxes, and insurance on the property unless Satellite Vision achieved a certain amount in gross sales, in which case Husband would assume the payments. Wife initially used money she inherited from her mother's estate to make the payments, but later sold certain items of marital property to satisfy them.

{¶4} The magistrate held a trial over the course of two days and issued a written decision. The trial court immediately adopted the magistrate's decision, but Wife filed objections to the decision. Wife also supplemented her objections upon receipt of the trial transcript, and Husband filed a brief in opposition to Wife's objections. Upon review, the trial court overruled Wife's objections and entered judgment in accordance with the magistrate's decision.

{¶5} Wife now appeals from the trial court's judgment and raises three assignments of error for this Court's review. For ease of analysis, this Court reorders the assignments of error.

II.

{¶6} Before turning to Wife's assignments of error, this Court notes that Husband has not filed a brief on appeal. As such, this Court "may accept [Wife's] statement of the facts and issues as correct and reverse the judgment if [Wife's] brief reasonably appears to sustain such action." App.R. 18(C).

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION BY ADOPTING THAT ASPECT OF THE MAGISTRATE'S DECISION THAT FAILED TO ACCORD THIS APPELLANT ANY CREDIT FOR MORTGAGE PAYMENTS SHE MADE ON AND AFTER THE TEMPORARY ORDER OF DECEMBER 9, 2013.

**{¶7}** In her second assignment of error, Wife argues that the lower court erred when it determined that she was not entitled to credit for the mortgage payments she made pursuant to the court's temporary orders. This Court agrees.

**{¶8}** Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. "A trial court is vested with broad discretion when fashioning a division of marital property." *Naylor v. Naylor*, 9th Dist. Summit Nos. 21758, 21881, 2004-Ohio-4452, ¶ 16. As such, "absent an abuse of discretion, a trial court's division of marital property will be upheld by a reviewing court." *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 37. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶9}** As previously noted, the magistrate ordered Husband to vacate the marital residence on or before January 1, 2014. Although Wife asked that the mortgage payments be paid through Satellite Vision, as had been the parties' past practice, the magistrate expressed reluctance to issue such an order based on evidence that the business had suffered financially since Wife's departure. The magistrate ultimately ordered Wife to pay the mortgage, but indicated that Husband would assume the payments if Satellite Vision achieved a certain amount in gross sales. The temporary orders further provided that Husband was entitled to operate Satellite Vision as usual and keep all the profits, with the exception of any mortgage payments he might make in accordance with the order.

{¶10} The parties' divorce trial took place over the course of two days: November 13, 2014, and March 16, 2015. On the first day of trial, Wife presented evidence that the parties' monthly mortgage payment was $863.75 per month and that their mortgage balance was $155,046.07 when the temporary orders went into effect (January 1, 2014). She also presented evidence that, on November 5, 2014, their mortgage balance was down to $152,613.21, amounting to a $2,432.86 reduction in principal from the effective date of the temporary orders. There was no dispute that Wife had made all of the mortgage payments during that time period with the exception of one, which Husband had paid. On the second day of trial, both parties acknowledged that Wife had continued to make the mortgage payments. Wife testified that she initially used money she inherited from her mother's estate to make all of the payments. Later, however, she was forced to sell a portion of marital property (i.e., gold coins) to satisfy the taxes and/or mortgage on the property.

{¶11} Wife asked the lower court to credit her for the additional equity that resulted when she made mortgage payments in accordance with the court's temporary orders and thereby reduced the principal balance on the parties' mortgage. While the magistrate acknowledged that Wife's payments had resulted in a reduction on the principal balance,[1] he determined that Wife was not entitled to any credit for the payments because she "ha[d] had the benefit of living in the home since January 1, 2014 * * *." The trial court, over Wife's objection, entered judgment consistent with the magistrate's determination that she was not entitled to any equity credit. The

---

[1] Notably, the magistrate relied upon the wrong amounts when transcribing the principal balance amounts set forth in Wife's Exhibit 7. The magistrate determined the initial balance on January 1, 2014, was $155,048.07 when, in fact, it was $155,046.07. Moreover, the magistrate determined that the balance on October 8, 2014, was $153,181.15 when, in fact, it was $152,613.21.

lower court ordered the marital residence sold and the proceeds divided equally between the parties.

{¶12} Wife argues that the trial court abused its discretion when it agreed with the magistrate and refused to award her credit her for any of the mortgage payments she made pursuant to the temporary orders. According to Wife, the court's order results in a windfall to Husband because it awards him the additional equity that accrued strictly as a result of her solo contributions. She notes that Husband agreed she made the mortgage payments through the second day of trial. She argues that the lower court acted unreasonably when it ordered the sale proceeds from the home split evenly.

{¶13} Under the particular facts and circumstances of this case, this Court agrees that the lower court acted unreasonably when it refused to award Wife any credit for the mortgage payments she made under the temporary orders. The lower court split the vast majority of the parties' assets and liabilities equally, including their account balances, cars, personal possessions, and a large amount of gold that they purchased during the marriage. The only large assets that remained were the marital home, Satellite Vision and the land on which it was located, and Wife's inheritance. The lower court awarded Husband Satellite Vision. It also awarded him a larger interest in the land on which the business was located, *see* Discussion, *infra*, and half of the proceeds from the sale of the marital home. Although the court specifically found that Wife's inheritance was her separate property, it then refused to credit her for the mortgage payments she made from that inheritance. The court also subtracted from Wife's share of the marital gold the amount she used to pay the mortgage and/or taxes.[2]

---

[2] The parties owned 50 gold coins, which they purchased during the course of the marriage. Wife initially cashed in 5 gold coins to satisfy the mortgage and/or taxes on the marital residence and later cashed in another 10 coins for additional payments and other expenses because she did

{¶14} The marital residence was jointly titled in the parties' names such that both were responsible for the mortgage, taxes, and insurance on the property. There is no dispute that the only source of income the parties had during the marriage came from Satellite Vision and that the business routinely paid those expenses before Wife filed for divorce. As a result of the temporary orders, Wife no longer had access to the profits from the business. Moreover, no temporary or permanent support orders were ever issued in this case. The evidence was that Wife used her separate property, as well as her portion of certain marital property, to pay down a marital debt. Although Wife benefited from living at the property, Husband benefited from the reduction in the principal balance for which he too was liable. Moreover, Husband did not present any evidence that his personal expenses increased after he vacated the marital residence (e.g., that he was forced to incur a rent payment). Under these particular facts and circumstances, we cannot conclude that it was reasonable for the court to deny Wife any equity credit for the mortgage payments she made. *Compare Naylor*, 2004-Ohio-4452, at ¶ 21-26.

{¶15} Notably, while Wife seeks an equity credit for 15 mortgage payments, she did not present evidence on the extent to which the mortgage principal was reduced as of March 16, 2015. Wife produced evidence that (1) the monthly mortgage payment was $863.75 per month, and (2) the mortgage balance was down to $152,613.21 by November 5, 2014. She did not, however, produce updated information on the second day of trial to reflect the additional reduction in the mortgage balance since the first day of trial. It is also unclear whether, on appeal, she has accounted for the single month's mortgage that Husband paid. Accordingly, this Court takes no position on the exact amount of equity due to Wife. On remand, the trial court

not have any other disposable income. The lower court ultimately agreed that the gold coins were marital and should be split. Of the remaining 35 coins, the court awarded 25 coins to Husband and 15 coins to Wife. Thus, only Wife was required to expend at least a portion of her share of the coins on the mortgage and/or taxes on the marital residence.

must determine the size of the equity credit that Wife should receive. *See Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 10-11. Wife's second assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR I

> THE TRIAL COURT COMMITTED ERROR IN ADOPTING THAT ASPECT OF THE MAGISTRATE'S DECISION THAT EFFECTIVELY AMOUNTED TO AN EQUITABLE DIVISION OF THE EQUITY VALUE OF THE PARTIES' MARITAL RESIDENCE WITHOUT MAKING WRITTEN FINDINGS OF FACT TO SUPPORT THAT DETERMINATION.

{¶16} In her first assignment of error, Wife argues that the trial court erred when it awarded Husband half the equity in the marital residence in the absence of detailed factual findings. *See* R.C. 3105.171(G). Specifically, she argues that the court neglected to explain its decision to deny her an equity credit in the home, given that she alone made the mortgage payments for a significant period of time. Based on this Court's resolution of Wife's second assignment of error, this assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT'S ADOPTION OF THE MAGISTRATE'S DECISION THAT 85% OF THE BUSINESS PROPERTY WAS HUSBAND'S SEPARATE PROPERTY IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In her third assignment of error, Wife argues that the lower court's finding that Husband possessed an 85% separate property interest in certain real property is against the manifest weight of the evidence. We agree.

{¶18} As noted, this Court generally reviews a trial court's action on a magistrate's decision for an abuse of discretion, *see Fields*, 2008-Ohio-5232, at ¶ 9, but, in doing so, considers the court's action "with reference to the nature of the underlying matter." *Tabatabai*,

2009-Ohio-3139, at ¶ 18. "The classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard." *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 20. When reviewing the manifest weight of the evidence, this Court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Alterations sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶19} "'Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate.'" *Collins v. Collins*, 9th Dist. Summit No. 27311, 2015-Ohio-2618, ¶ 38, quoting *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 8. Separate property includes "[a]ny real * * * property or interest in real * * * property that was acquired by one spouse prior to the date of the marriage" and any "[p]assive income and appreciation acquired from separate property." R.C. 3105.171(A)(6)(a)(ii), (iii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 19.

{¶20} This assignment of error concerns real property located on Wooster Road. The property consists of land and a building that serves as both the headquarters of Satellite Vision and a rental unit for two tenants. There was testimony that Husband's parents purchased the land a few years before the parties married. At that time, there was no building on the property, and

Husband was renting space elsewhere to serve as the headquarters for his business. When his rent increased, Husband decided to construct a building on his parents' property. There is no dispute that the construction started before the parties married, but finished afterwards.

{¶21} The parties offered starkly contrasting estimates as to how much construction work was performed on the building before they married. According to Wife, the building was only about 10% complete when the parties married because there was no siding on the building, no shingles on the roof, and no doors, windows, flooring, electrical connections, or plumbing. According to Husband, the building was about 80 to 85% complete when the parties married, as critical features such as the water and sewer connections, the foundation, the outside walls, and the roof were already intact. To support his estimate, Husband produced a number of receipts that predated the marriage and showed that either he or Satellite Vision expended $43,990.61 on construction-related costs.

{¶22} Husband and Wife entered into a purchase agreement for the Wooster Road property in September 1994, four years after they married. Pursuant to the purchase agreement, they agreed to pay Husband's parents $11,140 for the property over the course of four years. There is no dispute that Husband's parents jointly deeded the property to the parties in 1998 and, since that time, it has served as the headquarters for Satellite Vision and a rental unit. Although neither party secured an independent appraisal for purposes of trial, Wife introduced into evidence the 2014 tax assessment for the property. The tax assessment showed that the appraised value of the property was $129,170.

{¶23} At trial, Husband did not dispute that the Wooster Road property was jointly titled in his and Wife's names and that they came into possession of it during the marriage. He asked to keep the property, however, because it served as the headquarters for his business. He further

asked the court to credit him with the $43,990.61 that he expended on the property before the marriage.

{¶24} The magistrate determined that the Wooster Road property was worth $129,170. He further determined that Husband had met his burden of establishing a separate interest in the property and that his separate interest amounted to 85% of the total value of the property. The magistrate found the remaining 15% interest to be marital property of which Wife was entitled to one-half. Accordingly, he ordered Husband to pay Wife 7.5% of the total value of the property ($9,688.43) within one year. He otherwise awarded the property to Husband. The trial court, over Wife's objection, entered judgment consistent with the magistrate's order.

{¶25} Wife argues that the trial court erred when it adopted the magistrate's decision because there was no evidence to establish that Husband had an 85% separate property interest in the Wooster Road property. Wife argues that Husband only traced a separate property interest in the amount of $43,990.61. While Husband estimated that the building was 80 to 85% complete when they married, Wife argues, he never offered any evidence beyond the $43,990.61 in receipts to tie that estimated percentage to the value of the property. She argues that it was error for the lower court to conflate Husband's testimony about the amount of progress he achieved building the structure on the property before the marriage with the value of the property itself.

{¶26} Upon review, this Court agrees that the record does not support the lower court's finding that Husband established an 85% separate property interest in the Wooster Road property. Because the parties acquired the property during the marriage, a presumption arose that it was marital property. *Collins*, 2015-Ohio-2618, at ¶ 38, quoting *Reed*, 2010-Ohio-4550, at ¶ 8. It was Husband's burden to trace any separate interest he intended to claim. *See Eikenberry*, 2010-Ohio-2944, at ¶ 19. Although Husband estimated that the building on the

property was 80 to 85% complete when the parties married, his estimate did not concern the value of the property itself. The only concrete valuation evidence Husband offered was Exhibit Z, a collection of receipts. The receipts evidenced that either he or his company expended $43,990.61 on the Wooster Road property before the date of the parties' marriage. As such, Husband only met his burden of tracing a separate property interest in that amount. *See id.* The record does not support the lower court's finding that Husband established a separate property interest in the amount of 85% of the appraised value of the property (i.e., $109,802.15). Consequently, Wife's third assignment of error is sustained.

### III.

{¶27} Wife's second and third assignments of error are sustained. Her first assignment of error is moot, so this Court declines to address it. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

J. ANTHONY TERILLA, Attorney at law, for Appellant.

ANTHONY J. COSTELLO, Attorney at Law, for Appellee.