[Cite as *Mercer v. Mercer*, 2024-Ohio-4827.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

ROBERT S. MERCER

    Appellant

    v.

MARIA N. MERCER

    Appellee

C.A. No.     2023CA0057-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    21DR0047

DECISION AND JOURNAL ENTRY

Dated: October 7, 2024

STEVENSON, Presiding Judge.

**{¶1}** Plaintiff-Appellant Robert Mercer ("Husband") appeals from the judgment of the Medina County Common Pleas Court, Domestic Relations Division. For the reasons set forth below, this Court affirms in part, reverses in part, and remands in part for further proceedings consistent with this opinion.

I.

**{¶2}** Husband and Defendant-Appellee Maria Mercer ("Wife") were married on December 27, 2004. Two minor children were born as issue of the marriage. Husband filed a complaint for divorce in February 2021. Wife filed an answer and counterclaim. The Magistrate issued temporary orders that ordered Wife to pay child support to Husband. Wife moved to modify the temporary orders, and the Magistrate held a hearing on the motion. The Magistrate then issued an amended temporary order that awarded Wife temporary spousal support and ordered Wife to pay child support to Husband beginning March 29, 2021. The amended temporary order also

provided that additional arguments regarding any arrearages, overpayments, offsets, and credits would be addressed at final hearing.

{¶3} Husband timely filed a motion to set aside the Magistrate's amended temporary order and Wife responded in opposition. Following a hearing, the court denied Husband's motion. The same day, Husband moved to modify the amended temporary orders which the court scheduled to be heard at trial.

{¶4} The case proceeded to trial which took place over the course of four days beginning May 23, 2022, and concluding on February 13, 2023. During the trial, the parties reached an agreement regarding a shared parenting plan that was approved and adopted by the court. Pursuant to the court's instructions, the parties filed post-trial briefs with closing arguments and proposed judgment entries. The trial court issued a decree of divorce on June 21, 2023.

{¶5} Husband timely appealed from the judgment entry of divorce and asserts twelve assignments of error for our review. Husband's assignments of error will be addressed out of order for ease of analysis.

## ASSIGNMENT OF ERROR VII

**THE TRIAL COURT ERRED BY ORDERING THE SALE OF THE PARTIES' MARITAL RESIDENCE CONTRARY TO THE PARTIES' STIPULATED AGREEMENT AS JOURNALIZED IN THEIR SHARED PARENTING PLAN WITH THE GUARDIAN AD LITEM'S RECOMMENDATION, CONTRARY TO R.C.[]3105.171(F)(3), AS WAS READ INTO THE RECORD (JUDGMENT ENTRY DECREE OF DIVORCE ORDER "E").**

{¶6} The trial court ordered that the marital residence be sold and the proceeds split equally between the parties. Husband argues that it was not in the best interest of the parties' minor children to sell the marital residence because the shared parenting plan allegedly contemplated that the marital residence was to be preserved for the best interests of the children in

accordance with the recommendation of the Guardian Ad Litem ("GAL"). According to Husband, the GAL recommended that the children were to remain in the family residence and attend the same schools that they have attended for several years. He claims that the parties agreed to follow the GAL's recommendation in this regard.

{¶7} This argument raises the issue of whether the trial court erred in dividing the parties' marital property under R.C. 3105.171. The trial court maintains "'broad discretion when fashioning its division of marital property.'" *Barlow v. Barlow*, 2009-Ohio-3788, ¶ 13 (9th Dist.), quoting *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994). "Our review is limited to a determination of whether the trial court's division of property amounted to an abuse of discretion." *Fletcher v. Fletcher*, 1995 WL 29008, *2 (9th Dist. Jan. 25, 1995), citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} R.C. 3105.171(F) lists nine specific factors for the trial court to consider when dividing the parties' marital property. "When dividing marital property, the trial court shall consider all relevant factors, including but not limited to those set forth in R.C. 3105.171(F)." *Vujovic v. Vujovic*, 2005-Ohio-3942, ¶ 38 (9th Dist.) "'In determining whether the trial court abused its discretion, a reviewing court cannot examine the valuation and division of a particular marital asset . . . in isolation; rather, the reviewing court must…consider the totality of the circumstances . . . .'" *Simon v. Simon*, 1995 WL 500076, *4 (9th Dist. Aug. 16, 1995), quoting *Jelen v. Jelen,* 86 Ohio App.3d 199, 203 (10th Dist. 1995).

{¶9} Husband's argument is predicated on the factor set forth in R.C. 3105.171(F)(3), "[t]he desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage[.]" Husband

alleges that because he has custody of the children, and in light of the GAL's alleged recommendation that the children remain in the marital residence, it is not in the children's best interests to sell the marital residence. He also argues that Wife had no objection to him retaining the marital residence. We disagree with Husband.

{¶10} First, the trial court ordered the sale of the marital residence because it found that the parties could not agree on the value of the home and neither one presented an appraisal of the property; therefore, the best indicator of the value of the home would be the sale price. Husband does not dispute that finding and makes no argument that ordering the sale of the property in a situation where there was no appraisal or other valuation constitutes an abuse of discretion.

{¶11} Furthermore, Husband's contention that Wife did not object to his retention of the residence is contradicted by both her testimony and the prayer for relief in her post-trial brief wherein she specifically asked the court to order that the property be sold and the proceeds divided. Moreover, R.C. 3105.171(F)(3) is but one of nine factors that the trial court may take into consideration in reviewing the totality of the circumstances. No single factor is controlling as Husband's argument seems to suggest.

{¶12} Additionally, the GAL's alleged recommendation as to the disposition of the marital residence is not a matter of record. The GAL was excused from the trial because the parties resolved their child custody issues, therefore, she did not testify as to her report and recommendations. Husband cites to the portion of the record where the parties agreed to adopt the terms of the GAL's recommendations into the shared parenting plan, but the actual terms were not memorialized on the record nor was the GAL's report introduced into evidence. Lastly, the shared parenting plan contains no provision stating that it is in the best interest of the children that they continue residing in the marital residence.

{¶13} Husband also argues under this assignment of error that before the proceeds of the sale are released, all of Wife's financial obligations under part H of the decree must be settled and disposed of to avoid "irreparable financial harm." We note that Husband's argument raises a contention unrelated to the written assignment of error under which it is raised. Pursuant to App.R. 12(A)(1)(b), appellate courts "'determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16.' Thus, this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 2010-Ohio-553, ¶ 70 (10th Dist.), quoting *In re Estate of Taris*, 2005-Ohio-1516, ¶ 5 (10th Dist.). "Accordingly, we will address each assignment of error as written and disregard any superfluous arguments not raised by the actual assignment of error under review." *Bonn v. Bonn*, 2013-Ohio-2313, ¶ 9 (10th Dist.). As Husband's argument was not raised in the written assignment of error under review, it is therefore superfluous and we will not address it.

{¶14} Husband's seventh assignment of error is overruled.

### ASSIGNMENT OF ERROR X

**THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF SPOUSAL SUPPORT PAID BY APPELLANT, AND INCOME IMPUTED TO APPELLEE, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE (JUDGMENT ENTRY DECREE OF DIVORCE FINDING #9 AND ORDER "J") AND TO R.C.[]3105.18(C)(1)(B).**

{¶15} The trial court found that for purposes of support, Wife is capable of earning $30,000, and based on the factors enumerated in R.C. 3105.18(C)(1), it was appropriate and reasonable that Husband pay Wife spousal support in the amount of $2046.00 per month for a period of 38 months effective as of May 23, 2022, the first day of trial. The trial court noted in its findings that Husband's vocational expert, Mr. Mark Anderson, opined that "[t]aking into consideration [Wife's] education, criminal history and language challenges . . . [Wife] could find

employment in a salary range of $34,260.00 to $60,560.00." Husband argues that because the trial court's ultimate determination of Wife's income is lower than the range Mr. Anderson testified Wife was capable of earning, the trial court's finding is not based on any factual evidence. We disagree with Husband.

{¶16} Normally, we review a trial court's award of spousal support under an abuse of discretion standard. *Hamrick v. Hamrick*, 2024-Ohio-2517, ¶ 41 (9th Dist.). However, in this case, Husband challenges the trial court's finding as to Wife's income that was used to calculate spousal support, which is subject to a manifest weight of the evidence review. *Lee v. Lee*, 2019-Ohio-61, ¶ 8 (9th Dist.). In reviewing the manifest weight of the evidence,

> this Court "must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." In weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse."

(Internal citations omitted.) *Kim v. Kim,* 2020-Ohio-22, ¶ 10 (9th Dist.).

{¶17} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, duration and terms of payment, R.C. 3105.18(C)(1) sets forth 14 factors that the trial court shall consider in making an award of spousal support. There is no set mathematical formula for determining the amount and duration of support. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96 (1988). The trial court must weigh all of the factors listed in R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id.* "[T]he trial court need not comment on each factor, but the record must demonstrate that the court considered each factor in making its spousal support award." *Barlow*, 2009-Ohio-3788, at ¶ 22.

{¶18} Husband does not allege that the trial court did not consider all of the R.C. 3105.18(C)(1) factors. Rather, his argument is limited to the allegation that the court erred in its

finding as to the income-related factors, R.C. 3105.18(C)(1)(a) (income of the parties) and (b) (relative earning abilities).

{¶19} Wife is a native Russian. Her English is limited and she had an interpreter during the proceedings in this case. During the pendency of the case, Wife underwent three surgeries for breast cancer including a double mastectomy in August 2022. In 1999, Wife earned a degree in medical nursing from Russia which is the equivalent of an associate's degree in nursing in the United States ("U.S.") Throughout the marriage, Wife worked part-time either as a nurse's aide or as a residential/commercial cleaner. Wife was convicted of Operating A Vehicle Impaired ("OVI") and disorderly conduct during the pendency of the case.

{¶20} As will be explained below, Husband's argument interprets Mr. Anderson's testimony as to the range of Wife's earning abilities in a vacuum without accounting for the other evidence the trial court considered regarding Wife's earning abilities, including information adduced upon cross-examination of Mr. Anderson that could have impacted the weight the trial court gave to his opinion.

{¶21} The trial court found that Mr. Anderson "considered [Wife's] nursing certifications from Russia and testified that [Wife] could request certification in the U.S. but acknowledged that her [OVI] would be an impediment that would prevent her from doing so until the case was expunged." That finding is supported by Mr. Anderson's testimony on cross-examination. When Mr. Anderson learned of Wife's criminal background from Wife's counsel, which he admittedly did not inquire about when he interviewed Wife, he testified that the only job Wife would be immediately eligible to obtain would be as a commercial or residential cleaner with an annual full-time salary of $34,260, and that without an expungement of her criminal record, she would not be qualified to work in any of the other occupations listed in his report. Furthermore, Mr. Anderson

stated that although he knew there was a process for international nurses to obtain licensure in the U.S., he was not aware of the specific requirements.

{¶22} The trial court also considered Wife's own testimony regarding her work history, criminal background, medical condition, English language skills, computer skills, and attempts to find employment. Wife testified that the process for transferring her nursing degree to the U.S. involves either the applicant or a relative living in Russia to file an application in person with the Russian nursing authority, and that once the application is filed, it takes at least ten months for the U.S. to verify the international diploma. After the diploma is verified, the applicant then must pass a background check and take two exams, one for English skills and the other for nursing skills. Although Wife started the degree transfer process at one point prior to this case, she did not pass the English language skills assessment. Wife further testified that her aunt, who resided in Russia and filed the application on her behalf, was no longer willing to do so. According to Wife, even if she were to obtain a nursing license in the U.S., her health condition would prevent her from working as a nurse due to its physical demands. Wife did not pass the test to be a State-Tested Nursing Assistant.

{¶23} Wife also testified that she started her own cleaning business in 2018. She charged between $15-$25 per hour but also incurred business expenses that she paid out of her earnings. She testified that her cleaning work became very unstable during COVID, and thereafter she was only able to find approximately 12 hours of work per week, earning between $200-$300 per week. In the summer of 2021, Wife underwent the first of the three surgeries for breast cancer. Wife stated that she has had problems finding new cleaning jobs because the web site that she used to find cleaning jobs conducted a background search which revealed her criminal convictions. As a

result, she was no longer permitted to advertise on that web site. As of the trial, Wife was applying for cashier positions and doing some knitting and sewing for friends.

{¶24} The trial court further stated in its findings that it considered the parties' tax filings. Husband testified that he prepared the parties' joint returns from 2017 through 2019. The 2017 return reflects no earnings for Wife and states her occupation as an "[a]t home Mom." The 2018 return showed earnings of $9,000 for Wife. In 2019, Husband testified that he did not know Wife's earnings so he did not report any income for her. Wife's 2020 tax return, which was prepared after the parties' separation by someone other than Husband, reflected annual earnings from unemployment in the amount of $19,371, and business earnings of $9,269. Wife testified that in 2021 her income was somewhere between five and six thousand dollars. As of the last day of trial, Wife did not know how much she expected to earn in 2022.

{¶25} Having reviewed the record, we conclude that this is not an exceptional case that requires us to conclude the trial court lost its way when it determined Wife's annual earning ability at $30,000. The trial court's findings reflect that it did consider Mr. Anderson's opinion, but also considered other evidence such as Wife's testimony and the parties' tax filings, which if believed, could support an income figure for Wife lower than the range of Mr. Anderson's opinion. The trial court, as the finder of fact, was in the best position to judge the credibility of the parties' testimony and the evidence. Based on its finding of $30,000 as Wife's earning ability, it could be reasonably inferred that the trial court assigned greater weight and credibility to the evidence and testimony that, in effect, discounted Mr. Anderson's opinion.

{¶26} Husband's tenth assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED BY NOT ORDERING ARREARAGES FOR APPELLEE FOR UNDERPAYMENTS OF TEMPORARY CHILD**

**SUPPORT DURING THE AMENDED TEMPORARY ORDERS (#2) FROM MARCH 26, 2021, THROUGH MAY 23, 2022, CONTRARY TO R.C.[] 3119.01(C)(12), R.C.[]3119.02, AND R.C.[]3119.05.**

{¶27} Husband argues that the Magistrate incorrectly calculated child support in the amended temporary orders because she deducted from Husband's income spousal support paid, reflected on line 11 of the worksheet, but did not include spousal support received on line 6 (other annual income or potential income) for Wife. Husband argues that the trial court erred by not correcting this error and ordering a retroactive modification of the temporary orders from their effective date of March 29, 2021, through May 23, 2022, the first day of trial. We agree.

{¶28} This Court has previously stated the following regarding this issue:

R.C. 3119.05(B) provides, "[w]hen a court computes the amount of child support required to be paid under a court child support order [,] [. . . ] the amount of any court-ordered spousal support actually paid *shall be deducted from the gross income of that parent* to the extent that payment under the child support order or that payment of the court-ordered spousal support is verified by supporting documentation." (Emphasis added.) The child support worksheet includes a line (line [11]) to account for such deduction. *Moreover, gross income, for purposes of calculating child support, and as defined in R.C. 3119.01(C)[(13)], includes "spousal support actually received [.]"* R.C. 3119.01(C)[(13)].

Here, the child support worksheet does not include a deduction for the payment of spousal support to the income of [the obligor] and does not include a credit to the income of [the obligee] for spousal support received. *This Court has held that a trial court's failure to credit as income spousal support paid to an obligee and deduct spousal support from an obligor on a child support worksheet constitutes an error by the trial court. See Foy v. Foy*, . . . 2016-Ohio-242, ¶ 23 [9th Dist.] ("[W]e conclude that the trial court erred in failing [to] include as income to Ms. Foy the $750 per month payment and erred in failing to deduct from Mr. Foy's income the same payment.") Therefore, [the obligor's] arguments that the trial court erred when calculating the parties' income when determining the child support obligation are well taken.

(Emphasis added.). *Doubler v. Doubler*, 2023-Ohio-393, ¶ 23-24 (9th Dist.). Similarly, here, while the child support worksheet attached to the Magistrate's amended temporary order correctly includes a deduction for the spousal support paid by Husband on line 11, it does not include a corresponding addition to Wife's income for spousal support received on line 6. The statutory

definition of "gross income" under R.C. 3119.01(C)(13) is not discretionary and must include spousal support received, therefore the trial court erred as a matter of law by not correcting this error and ordering a retroactive modification of the temporary orders in its decree of divorce. *Doubler* at ¶ 23-24.

{¶29} Accordingly, Husband's fourth assignment of error is sustained. This error warrants remand to the trial court for a recalculation of temporary child support.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED BY DENYING APPELLANT HIS RIGHT TO BE HEARD ON HIS MOTION TO SET ASIDE AMENDED TEMPORARY ORDERS & HIS MOTION TO MODIFY SAID ORDERS, BY CANCELLING THE NOVEMBER 3, 2021, EVIDENTIARY HEARING WHICH VIOLATED HIS RIGHTS UNDER OHIO CONSTITUTION ARTICLE I, SECTION 16, OHIO RULE OF CIVIL PROCEDURE, CIV.R. 53(D)(4)(D), AND IN NOT ADHERING TO THE OHIO CODE OF JUDICIAL CONDUCT (JUD.COND.R.) RULE 2.6(A) WHEN PRESENTED WITH PRIMA FACIE EVIDENCE THAT APPELLEE FILED A FALSE FINANCIAL AFFIDAVIT, PROVIDED FALSE TESTIMONY, AND VIOLATED CIV.R.[]34 DURING DISCOVERY.**

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY NOT SETTING ASIDE THE MAGISTRATE'S AMENDED TEMPORARY ORDERS #2, #3, #4, AND #6, WHICH WERE CONTRARY TO OHIO REVISED CODE, (R.C.) 3105.18(C)(1)(A, B, F, H, & I), R.C.[]3119.01(C)(12), AND R.C.[]3119.05.**

{¶30} Under assignment of error one, Husband argues that he was denied the opportunity to introduce new evidence at the hearing on his motion to set aside the amended temporary orders. Under assignment of error two, he argues that not only did the trial court err in failing to set aside the temporary order, but it compounded the error by not addressing the deficiencies in the amended temporary order at final trial.

{¶31} These assignments of error are moot in light of our disposition under assignment of error four as the matter is being remanded to the trial court for further proceedings to recalculate temporary child support.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED BY REFUSING TO ORDER CREDIT FOR APPELLANT'S OVERPAYMENT OF TEMPORARY NON-TAXABLE MAINTENANCE (SPOUSAL SUPPORT) DURING THE AMENDED TEMPORARY ORDERS (#4) FROM MARCH 26, 2021, THROUGH MAY 23, 2022, CONTRARY TO R.C.[]3105.18(C)(1)(A, B, F, H, & I).**

{¶32} Under the third assignment of error, Husband argues that his amended temporary spousal support of $2,378.08 per month is unlawful because it did not consider Wife's income from all sources under R.C. 3105.18(C)(1)(a), specifically Wife's unemployment compensation that she allegedly concealed from the Magistrate. We decline to reach the merits of this assignment of error and consider it moot in light of our disposition under assignment of error four.

{¶33} R.C. 3105.18(C)(1)(i) provides that in determining whether spousal support is appropriate and reasonable, one of the factors that the court must take into consideration is "[t]he relative . . . liabilities of the parties, including but not limited to any court-ordered payments by the parties[.]" Here, Wife's child-support obligation is a court-ordered payment. Therefore, to the extent that the recalculation of temporary child support may be a factor in the trial court's determination of spousal support, the trial court may recalculate spousal support on remand.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED BY NOT ORDERING CREDIT TO APPELLANT FOR PAYMENTS OF JOINT MARITAL DEBT DURING**

**THE AMENDED TEMPORARY ORDERS (#6) FROM MARCH 26, 2021, THROUGH JUNE 21, 2023, CONTRARY TO R.C.[]3105.171(C)(1).**

{¶34} Here, Husband assigns as error the following finding made by the trial court in the decree of divorce:

The Court finds that it is fair and equitable that the debt be divided equally between the Parties. [Husband] is requesting credit for marital debt that he paid pursuant to temporary orders. As the disparity in income, even after consideration of [Husband's] obligation to pay spousal support under the temporary orders, placed [Husband] in a better position than [Wife] to make payments on the marital debt, the court finds that it is not fair and equitable to give [Husband] credit for monies paid for debt under temporary orders.

{¶35} Temporary orders are provisional in nature and intended to preserve the status quo during the proceedings. *Matheson v. Matheson*, 2024-Ohio-2477, ¶ 17 (9th Dist). They are reviewable after entry of the final decree disposing of the action. *Id*. We review temporary orders under an abuse of discretion standard. *Id*; *see also DiLacqua v. DiLacqua*, 88 Ohio App.3d 48, 57 (9th Dist. 1993) (applying abuse of discretion standard of review to a trial court's decision regarding temporary support).

{¶36} Husband argues that while the worksheets attached to the amended temporary order reflect that the Magistrate equalized incomes, she then ordered an unequal division of debt such that he was ordered to "pay more," therefore placing him in an inferior financial position to Wife. In support, Husband states that he had sole temporary custody of the parties' minor children, with Wife having only supervised visits and no duty to support them directly; that he was responsible for day care costs, mortgage payments, taxes, homeowner's insurance, HOA fees, the children's cell phones, Wife's automobile insurance (the subject of his sixth assignment of error), and the children's school and medical expenses. We incorporate by reference the abuse of discretion standard outlined above for our review of the trial court's division of marital assets and liabilities.

{¶37} Husband has failed to provide any factual or numerical support for his arguments. He does not list the specific amount of the expenses that he was ordered to pay, with references to exhibits, and how those expenses, after being subtracted from his disposable income on the Magistrate's worksheet, reflect that he was placed in an inferior financial position to Wife. In short, Husband provides no mathematical equation demonstrating his assigned error with actual numbers. Without such information we cannot find that the court abused its discretion in this matter.

{¶38} Accordingly, Husband has not met his burden of showing that the trial court's order regarding the division of marital debt under the amended temporary orders constituted an abuse of discretion. Husband's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED BY NOT ORDERING CREDIT TO APPELLANT FOR PAYMENTS OF APPELLEE'S VEHICLE INSURANCE PAYMENTS DURING THE AMENDED TEMPORARY ORDERS (#6) FROM MARCH 26, 2021, THROUGH JUNE 21, 2023, CONTRARY TO R.C.[]3105.171(C)(1).**

{¶39} After calculating spousal support and equalizing incomes, the Magistrate ordered Husband to pay Wife's automobile insurance payment under the amended temporary orders. Husband argues that the trial court abused its discretion by not crediting him for those payments in the decree of divorce. In support, Husband states that Wife had been arrested and charged with OVI, which put her at risk of increased insurance rates, and that he should not be responsible for any such potential increase. Husband further maintains that since he was the victim of Wife's domestic violence charge and subsequent conviction for disorderly conduct, he should not be held accountable for her criminal actions by being ordered to pay her automobile insurance.

{¶40} We incorporate by reference the abuse of discretion standard of review outlined above regarding the division of marital assets and liabilities. We conclude that it is not an abuse of discretion for the trial court to order the party who is the primary wage-earner to pay the fixed expenses of the other on a temporary basis in this matter. The trial court's discretion is not governed by the alleged misconduct of the parties in incurring those expenses.

{¶41} Accordingly, Husband's sixth assignment of error is overruled.

### ASSIGNMENT OF ERROR VIII

**THE TRIAL COURT ERRED IN DETERMINING THE AMOUNTS AND ALLOCATION OF THE CASH FUNDS OF THE PARTIES' BANK ACCOUNTS (JUDGMENT ENTRY DECREE OF DIVORCE ORDER "F") CONTRARY TO R.C. 3105.171(C)(1).**

{¶42} The de facto termination date of the parties' marriage is January 14, 2021. The trial court found that as of that date, the parties had the following marital bank accounts: (1) Alta Bank: $4,800.92, (2) Alta Bank: $200.86, (3) Alta Bank: $6,761.00, (4) Glacier Bank: $1.43, and (5) PNC Bank $3,254.73. Husband alleges that evidence showed the balances were as follows: (1) Alta Bank: $4,669.74, (2) Alta Bank: $200.75, (3) Alta Bank: $ 4,646.75, (4) Glacier Bank: $73.49, and (5) PNC Bank $3,205.48.

{¶43} A trial court's determination as to the value of marital assets must be affirmed if it is supported by competent, credible evidence and is not otherwise an abuse of discretion. *Berger v. Berger*, 2015-Ohio-5519, ¶ 20-21 (11th Dist.); *see also Falah v. Falah*, 2017-Ohio-1087, ¶ 8 (9th Dist.) (standard of review regarding the trial court's resolution of disputed factual issues is whether there was competent credible evidence to support its decision).

{¶44} With one exception, the exhibits that Husband references in support of his argument do not reflect balances in those accounts as of January 14, 2021, but instead, show balances as of other dates or values different from what Husband claims in his brief. Husband points to Wife's

Exhibit 7, a statement dated January 4, 2021, which reflects a balance of $200.75 for the second Alta Bank account. That balance is 11 cents lower than the balance found by the trial court of $200.86. Thus, the trial court did err slightly in its valuation of this account. However, we find that this 11 cent discrepancy is de minimus and does not constitute an abuse of discretion. Despite this one minor miscalculation, the trial court's valuation of the parties' bank accounts is, as a whole, still supported by competent, credible evidence. This minor discrepancy can be corrected on remand under assignment of error twelve concerning the trial court's order offsetting child support arrears.

**{¶45}** It is difficult to discern Husband's second argument regarding the trial court's alleged error in the allocation of these accounts. He references Finding of Fact No. 4 and order F of the decree of divorce wherein the trial court equally divided the bank accounts. We interpret Husband's argument as taking issue with the trial court's equal division of these accounts as he alleges that the trial court "fail[ed] to allocate the parties' banking account balance properly, according to the evidence submitted . . . ."

**{¶46}** We can find no abuse of discretion in the trial court's equal division of the marital bank accounts. The trial court totaled the balances of the accounts as of the date of termination of the marriage and divided them equally. Husband has not demonstrated how an even split between the parties implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Husband's argument here is overruled.

**{¶47}** Accordingly, Husband's eighth assignment of error is overruled. The resolution of the minor miscalculation in the parties' bank accounts is further addressed under assignment of error twelve.

### ASSIGNMENT OF ERROR IX

**THE TRIAL COURT ERRED BY ADJUDICATING AND ALLOCATING APPELLANT'S SEPARATE PROPERTY WITHIN HIS BROKERAGE ACCOUNT (JUDGMENT ENTRY DECREE OF DIVORCE ORDER "G") CONTRARY TO R.C.[]3105.171(C)(1).**

{¶48} The trial court found that Husband has a Robinhood Investment Account that was obtained after January 14, 2021, the de facto termination date of the marriage, and that the funds used to open the Robinhood account were withdrawn from the parties' Alta Bank Account No. 7401, one of the accounts that the court ordered to be equally divided between the parties. We addressed the division of the parties' bank accounts under assignment of error eight *supra*.

{¶49} The trial court found that no evidence was presented that the funds used to open the Robinhood account were separate proceeds of Husband accumulated after January 14, 2021, and ordered the account to be divided equally between the parties with each receiving $851.50. Wife did not dispute Husband's testimony that the value of the account as of the trial was $1,703.

{¶50} Husband argues that because the trial court had already divided the funds in Alta Bank Account No. 7401, funds that were in turn used to open the Robinhood account, the trial court essentially divided the same asset twice when it ordered an equal division of the Robinhood account. He maintains that once the court divided the Alta account as of January 14, 2021, the monies later withdrawn from that account to open Robinhood had already been divided, and therefore, were not subject to another division. He claims that he was prejudiced by this error because it provided Wife with more than 50% of the balance of the Robinhood account. We disagree with Husband.

{¶51} "'The classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard.'" *Mullett* v. *Mullett*, 2017-Ohio-7152, ¶ 18 (9th Dist.), quoting *Hahn v. Hahn*, 2012-Ohio-2001, ¶ 20 (9th Dist.). We have previously set forth the manifest weight standard in our discussion under Husband's tenth assignment of error. "The

party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Eikenberry v. Eikenberry*, 2010-Ohio-2944, ¶ 19 (9th Dist.). Therefore, in this case, it was Husband's burden to establish by a preponderance of the evidence that the Robinhood account was his separate property.

{¶52} As of January 14, 2021, the value of Alta Bank Account No. 7401 was $6,761.11. Thereafter Husband retained that account in his individual name. His interrogatory responses to Wife reflect that as of May 21, 2021, the value of the account had increased to $14,589.07. The June 2021 statement shows that as of May 29, 2021, the balance increased again to $16,174.97. That same statement shows that on June 10, 2021, Husband withdrew $5,000 for "Robinhood funds." Husband testified that he then opened the Robinhood account with the $5,000 withdrawn from the Alta account. Husband further testified that after January 14, 2021, he used the Alta account to deposit his paychecks and government assistance funds (VA), and that the reason for the particularly high balances as of May and June 2021 was that he received a stimulus payment in March 2021 as well as a tax refund.

{¶53} We conclude that Husband did not meet his burden of tracing the $5,000 he withdrew from the Alta account to his separate property. Husband did not testify as to the character of the stimulus payment, tax refund, or any other deposits made into the account after January 14, 2021, to show that they were his separate property as opposed to marital funds accumulated by the parties prior to January 14, 2021, nor did he identify through bank statements the nature of the deposits into the account during that time. Therefore, Husband did not meet his burden to show that the funds deposited into Alta Bank Account No.7401 after January 14, 2021, and that were used to fund the Robinhood account were solely his separate assets and not commingled with Wife's.

**{¶54}** Accordingly, based on the foregoing, Husband did not present any competent, credible evidence that the Robinhood account was his separate property. Therefore, we cannot conclude that the trial court's order that the Robinhood account was marital property subject to equal division was against the manifest weight of the evidence. Husband's ninth assignment of error is overruled.

### ASSIGNMENT OF ERROR XI

**THE TRIAL COURT ERRED, CONTRARY TO R.C.[]3119.05(P), IN CALCULATING APPELLEE'S CHILD SUPPORT OBLIGATION CONTRARY TO LAW (JUDGMENT ENTRY DECREE OF DIVORCE ORDER "M" AND ATTACHED CHILD SUPPORT WORKSHEET).**

**{¶55}** The trial court ordered in paragraph M of the decree that Wife shall pay Husband the amount of $774.28 per month as child support for the parties' two minor children, including a 2% processing fee, plus cash medical in the amount of $28.84 per month effective as of May 23, 2022, the first day of trial. A guideline worksheet was attached to and incorporated by reference into the decree.

**{¶56}** Husband argues that the worksheet was not correctly calculated because the trial court did not properly complete Section 21 of the worksheet regarding his childcare expenses. We agree with Husband.

**{¶57}** The evidence is undisputed that Husband pays total childcare expenses in the amount of $6,162.00 annually for the two minor children. The worksheet correctly reflects that expense for Husband on line 20a. It also reflects Husband's actual out of pocket cost per child of $3,081.00 on line 21d. However, the rest of section 21, which is used to calculate each parent's share of childcare costs, is incomplete. Line 21b (child age) is blank for both children. Lines 21c (maximum allowable cost), 21e (the lesser of maximum allowable cost or the actual out of pocket cost), 21f (total of line 21e for both children), 21g (eligible federal and state tax credits), 21h

(childcare paid minus eligible tax credits), 21i (annual allowable cost for childcare that each parent is responsible for based on income shares), and 21j (line 21i minus line 21a) show a value of $0.

{¶58} The Child Support Guideline Manual for Ohio Courts and Agencies published by the Ohio Department of Jobs and Family Services ("Services Manual"), provides instructions for completing the child support worksheet. According to the Services Manual, in order to calculate the maximum allowable cost under line 21c, the children's ages must first be entered on line 21b. Those ages are then cross-referenced with a table of four possible age ranges (Table 2 in the Services Manual) that determines the value on line 21c, the maximum allowable childcare costs, for each child of the order. Based on the ages of the parties' children, Table 2 shows that the annual maximum allowable cost per child is $7,290.00. However, line 21c on the trial court's worksheet is $0. Line 21c affects the calculations throughout the remainder of Section 21, including the result in line 21j which is ultimately used to calculate the parties' adjusted child support obligations reflected on line 22.

{¶59} Accordingly, we agree with Husband that the trial court committed reversible error by not properly completing the child support worksheet. In addition, we note that the last section of the worksheet that typically contains lines 24 through 30 was not attached to the decree filed on the court's docket and is therefore missing from the record. Line 30 is particularly significant because it shows the total monthly obligation for the parent ordered to pay support. Although the court ordered Wife to pay $774.28 per month, that number is not reflected anywhere on the worksheet attached to the decree.

{¶60} Based on the foregoing, Husband's eleventh assignment of error has merit and is sustained.

**ASSIGNMENT OF ERROR XII**

**THE TRIAL COURT ERRED IN OFFSETTING CHILD SUPPORT ARREARAGES OF THE APPELLEE (JUDGMENT ENTRY DECREE OF DIVORCE ORDERS "F" AND "M") CONTRARY TO R.C.[]3119.02.**

{¶61} Here, Husband assigns as error that the trial court's orders in paragraphs F and M of the decree are incorrect based on the errors addressed under assignments of error eight and eleven; that is, that the trial court inaccurately divided the parties' bank account balances and then offset that amount against Wife's child support arrearages, which were also miscalculated, resulting in erroneous orders in paragraphs F and M. We agree.

{¶62} In paragraph F, the trial court offset Wife's child support arrearages from her portion of the bank accounts. In paragraph M, the trial court ordered Wife to pay child support in the amount of $774.28 per month effective as of May 23, 2022, then adjusted to zero her arrearages for the time period May 23, 2022, to May 23, 2023, noting that her arrearages had been previously addressed in paragraph F. Under Finding of Fact No. 11, Wife's child support obligation of $774.28 was also utilized to calculate Wife's arrearages from May 23, 2022, forward.

{¶63} In assignment of error eight, we concluded that the trial court's valuation of the parties' bank accounts balances was miscalculated by 11 cents, though not qualifying as an abuse of discretion, and that this minor discrepancy could be corrected on remand. In assignment of error eleven, we concluded that Wife's child support as of May 23, 2022, must be recalculated and a complete worksheet provided that includes the total monthly support obligation for the parent ordered to pay support. As noted above, Wife's child support obligation, reflected in paragraph M, was utilized to calculate Wife's arrearages from May 23, 2022, forward and resulted in the adjustment of her arrearages to zero as of May 23, 2023. Accordingly, we agree with Husband that

the errors addressed under assignments of error eight and eleven resulted in incorrect orders in paragraphs F and M and will require a recalculation of Wife's child support arrearages.

**{¶64}** Husband's twelfth assignment of error is sustained.

### III.

**{¶65}** The judgment of the Medina County Court of Common Pleas, Domestic Relations Division is affirmed in part, reversed in part, and remanded in part for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ROBERT S. MERCER, pro se, Appellant.

RONALD A. ANNOTICO, Attorney at Law, for Appellee.

PAUL J. KRAY, Attorney at Law, for Appellee.